604 A.2d 1075

**Candace KANESKI**

v.

**William KANESKI, Appellant.**

Superior Court of Pennsylvania.

Argued Dec. 11, 1991.

Filed March 16, 1992.

174

Chris F. Gillotti, Pittsburgh, for appellant.
Alfred L. Steff, Jr., Beaver, for appellee.

Before ROWLEY, President Judge, and KELLY and CERCONE, JJ.

CERCONE, Judge:

This appeal is from an order of custody of the Court of Common Pleas of Beaver County. We affirm.

Appellant is the father and appellee the mother of two minor children. In 1986, after the parties separated, they entered into an agreement for custody of the children which provided for primary physical custody to the mother and partial custody to the father. Under the schedule to which the parties agreed, appellant had physical custody of the children every other weekend from Friday evening to Sunday evening, every other Wednesday evening, alternating holidays, three weeks during the summer, and every Father's Day. The agreement also provided for appellant to have telephone communication with the children between 5:30 p.m. and 8:30 p.m. every day. In 1989, appellant sought modification of the consent order. Under an order entered on May 22, 1989, the lower court extended appellant's weekend partial custody through Monday morning and also awarded him partial custody every Wednesday evening rather than every other Wednesday. On July 5, 1990, appellant again filed a complaint for modification of custody, in which he requested primary physical custody of the children.

Both parties remarried after the divorce. The parties' two children currently live with appellee and her new husband during the periods of mother's physical custody. Appellant and his new wife live with the two children of the new wife's former marriage. Appellee's new husband, Dennis Lynch, was laid off from his job as a consulting nuclear engineer in Beaver County in 1989, after construction was completed on Duquesne Light Company's Beaver Valley nuclear power plant. After six months of unemployment, Mr. Lynch was offered a similar job at a nuclear power station in Rochester, New York, Mr. Lynch decided to accept the job which is temporary in nature. He has,

however, also been offered a permanent position, which, at the time of the lower court's decision in this custody matter, he had not yet accepted.[1] Based on these circumstances, appellee and Mr. Lynch sold their home in Beaver County and purchased a home in Webster, New York, in October, 1990. Appellee gave appellant notice of her intent to move on September 14, 1990. Appellant then filed a petition for special relief requesting an order enjoining appellee from removing the children from Beaver County pending resolution of the complaint he had filed in July, 1990 for modification of custody. The lower court denied the petition.

Appellant appealed the order denying his petition for special relief to the Superior Court, and requested an injunction prohibiting appellee from moving the children from Beaver County. On October 17, 1990, the Superior Court granted appellant's petition for injunction and apparently directed the lower court "to expedite psychological evaluations and to conduct a preliminary hearing to ascertain the reasons for mother's desire to move to New York." [2] (Opinion of April 17, 1991, Kunselman, J., at 11).

Pursuant to this court's order, Gerard N. Massaro, Ph.D., performed an evaluation of the parties and the children. The lower court conducted a hearing on the matter on March 4, 5, and 15, 1991. Testimony was taken from the parties, the children, Dr. Massaro, and others. After the hearing, the lower court entered an order deciding the custody dispute as follows: Legal custody of the minors was awarded to both parties equally. The lower court granted physical custody to appellee, mother, with partial physical custody to appellant. The court order permitted mother to exercise her physical custody of the children in Webster, New York.

1. The lower court indicated that Mr. Lynch was unwilling to accept the position until he learned the outcome of the instant custody litigation.

2. We have been unable to locate a copy of the order of the Superior Court in the reproduced record certified to us on appeal.

The schedule of appellant's partial physical custody, as determined by the lower court, was as follows: one weekend each month in Beaver County, and one weekend each month in Webster, New York, with appellant to provide appellee forty-eight hours notice of his intent to exercise his partial custody right in New York. Appellant was also awarded one day of partial custody during any weekend in which appellee was present in Beaver County for the purpose of visiting relatives. The lower court also awarded appellant one-half of the time the children are in Beaver County with appellee for the purpose of appellee's participation in court-mandated counseling sessions. The custody order also provided for apportionment of the children's vacation and holiday time. With certain exceptions, appellee was given the responsibility for transporting the children to and from Beaver County for the purpose of exercising the awards. The lower court also ordered that both parties undergo counseling to help them lessen the conflicts between them and "to improve their ability to communicate with each other in matters regarding their children." The court ordered that the counseling occur in southwestern Pennsylvania. Finally, the lower court provided that in the event the parties complied with the conditions set forth in the order of custody, it [the court] would consider increasing appellant's periods of partial custody and relaxing or eliminating other conditions, including the requirement of counseling and the expense of transporting the children.

The lower court entered the foregoing order on April 17, 1991. Appellant's appeal of the order was timely. On appeal, appellant raises the following issues: (1) whether the lower court erred in denying his request for modification of the existing custody order, and in permitting appellee to relocate and remove the children from Pennsylvania; and (2) whether the lower court erred in requiring father to exercise one of his monthly partial custody visits in New York state. Our scope of review of an order of child custody is as follows:

The scope of review of an appellate court reviewing a child custody order is of the broadest type; the appellate court is not bound by the deductions or inferences made by the trial court from its findings of fact, nor must the reviewing court accept a finding that has no competent evidence to support it.... However, this broad scope of review does not vest in the reviewing court the duty or the privilege of making its own independent determination.... Thus, an appellate court is empowered to determine whether the trial court's incontrovertible factual findings support its factual conclusions, but it may not interfere with those conclusions unless they are unreasonable in view of the trial court's factual findings; and thus, represent a gross abuse of discretion.

*McMillen v. McMillen*, 529 Pa. 198, 602 A.2d 845 (1992) (citations omitted).

Appellant first argues, citing *Gruber v. Gruber*, 400 Pa.Super. 174, 583 A.2d 434 (1990), that the lower court erred in permitting the appellee to relocate to New York with the children. He alleges that there will be no distinct and separate advantages as defined in *Gruber* to the children from the move, and that in fact, substantial negative and detrimental effects will flow from the relocation. Appellant lists as detrimental effects of the move the loss of extended family, schools in which the children had done well, friends, and accessibility to the father.

In *Gruber*, the court was faced with deciding the issue of whether the appellant, in that case the mother, should be permitted to move from the jurisdiction with the children, retaining her primary physical custody of them. The mother, who had custody of the parties' three pre-school age children, one of them an infant born after the parties' separation, wished to move with the children to Illinois, to reside with her brother and sister-in-law, who had offered her and the children a home until the mother was able to become self-sufficient. The brother residing in Illinois was the relative of appellant's who was in closest geographic proximity to Pennsylvania, and the mother had no friends in

the area of Pennsylvania where she was residing. *Id.*, 400 Pa.Superior Ct. at 178, 583 A.2d at 435–36. The lower court ruled that the children were not to be removed from its jurisdiction, and if the mother moved from Pennsylvania, the children were to remain in the legal and primary custody of the father during the school year and with the mother during the months of June, July, and August. *Id.*, 400 Pa.Superior Ct. at 180, 583 A.2d at 437.

On appeal, the Superior Court reversed. The court held that in order to justify a relocation of the children by the custodial parent, the custodial parent must demonstrate (1) that the move is likely to significantly improve the quality of life for the parent and the children; (2) that the move is not motivated simply by a desire to frustrate the visitation rights of the non-custodial parent or to impede the development of a healthy relationship between the child and the non-custodial parent; and (3) the feasibility of creating substitute visitation arrangements to ensure a continuing, meaningful relationship between the children and the non-custodial parent. *Id.*, 400 Pa.Superior Ct. at 184–85, 583 A.2d at 440. The court emphasized that in determining the best interests of the child in the post-divorce situation, the focus must be mainly on the primary custodial family. *Id.*, 400 Pa.Superior Ct. at 182–83, 583 A.2d at 438.

It is in that family that the day-to-day routine and the day-to-day emotional interaction between parent and child are established. These myriad and ordinary contacts forge the child's character, psychological health, and value system. While the family of the non-custodial parent is important to the child, the nature of that relationship is necessarily different and less intense and not as formative and influential as the other.

*Id.* The court also recognized that "in every relocation dispute the following interests must be accommodated as nearly as possible:"

the custodial parent's desire to exercise autonomy over the basic decisions that will directly affect his or her life and that of the children; a child's strong interest in

maintaining and developing a meaningful relationship with the non-custodial parent; the interest of the non-custodial parent in sharing in the love and rearing of his or her children; and, finally, the state's interest in protecting the best interests of the children.

*Id.,* 400 Pa.Superior Ct. at 184, 583 A.2d at 438–49.

■ Appellant's argument that the move would not benefit the children misinterprets the holding of *Gruber.* In *Gruber,* the court emphasized the well-being of the custodial family and held that "when the move will significantly improve the general quality of life for the custodial parent, indirect benefits flow to the children with whom they reside." *Id.,* 400 Pa.Superior Ct. at 185, 583 A.2d at 439. Here, the record is convincing that the move would benefit appellee. Her husband has been offered substantial employment on a permanent basis in New York. The benefit to appellee, her husband, and the children of accepting such an offer is obvious in terms of the economic security it would provide. A family living with the security of permanent financial resources is certainly a family with a significantly improved quality of life over one which lives under the clouds of unemployment, temporary employment, lack of health insurance, etc. As *Gruber* holds, it is certain that the substantial benefits of such employment will flow indirectly to the children who reside with Mr. Lynch and his wife, their mother. Thus, the lower court did not err in finding the first criterion of *Gruber* satisfied. We do not accept appellant's argument that there must be demonstrated a separate and distinct non-economic benefit to satisfy the first criterion of *Gruber.* While the *Gruber* court held that such other benefits must not be ignored or overlooked, it did not require that a move which would significantly improve the quality of life on an economic basis be precluded because other less tangible factors were lacking.

Appellant next contends that appellee failed to prove the second criterion of *Gruber* because he asserts that her motive for moving was suspect. As we previously indicated, the second criterion of *Gruber* is that "the court

must establish the integrity of the motives of both the custodial and the non-custodial parent in either seeking the move or seeking to prevent it." *Id.*, 400 Pa.Superior Ct. at 185, 583 A.2d at 439. The *Gruber* court further explained this criterion as follows:

> The court must assure itself that the move is not motivated simply by a desire to frustrate the visitation rights of the non-custodial parent or to impede the development of a healthy, loving relationship between the child and the non-custodial parent. An aspect of this determination is the degree to which the court can be confident that the custodial spouse will comply cooperatively with alternate visitation arrangements which the move may necessitate. Likewise, the court must consider the motives of the non-custodial parent in resisting relocation and decide whether the resistance is inspired by motives other than a legitimate desire to continue and deepen the parent-child relationship.

*Id.*

Appellant contends that mother's initial motivation for relocation may have been to attempt to frustrate his desire for increased custody of the children. Appellant points out that in July, 1990, he had filed a petition for modification of custody, in which he sought a shared custody arrangement. He further asserts that when appellee and Mr. Lynch decided to accept the offer of employment in New York state, the position available was only a temporary one, and there was no offer of permanent employment. From this, he concludes that appellee may initially have been motivated in her decision to move from a desire to frustrate him in his custody rights. Appellant also contends that the lower court erred when it stated that it was his "burden" to show that his motive in seeking to prevent the re-location was inspired by nothing other than a "legitimate desire to continue and deepen his relationship with the children."

The lower court found in regard to this issue that the mother's motive for moving was related "solely to her husband's employment and not from a desire to frustrate

the father's contact with the children or to impede the development of a healthy relationship between him and the children." The lower court indicated that it accepted as true the testimony of appellant and her husband that his employment was the sole motive of the move and that they would cooperate with the alternative partial custody arrangements which the move would require. With regard to appellant's motives in resisting the move, the lower court cited evidence which led it to conclude that appellant is resisting the relocation not solely because he wants to further and deepen his relationship with his children, but also because he wants to "win one in the war with the mother." (Opinion of April 17, 1991, Kunselman, J., at 25–27).

We have reviewed the record and find that there is ample support therein for the trial court's conclusion that appellee's motivation for the move is not to frustrate appellant's custody rights, but is instead a desire to secure permanent substantial employment for the family unit consisting of appellee, her husband, Mr. Lynch, and the children who are the subject of this dispute. Appellant's contention regarding his perception of appellee's initial motivation regarding the move is unsupported and irrelevant in any case. It is not appellee's initial motivation, but her motivation at the time of the lower court hearing with which the lower court was properly concerned. At the hearing, both appellee and Mr. Lynch testified extensively concerning the factors surrounding their decision to move. It was not an abuse of discretion for the lower court to conclude from that testimony that appellee was motivated by her desire and that of her husband that he secure a reasonable offer of employment in order to support the family unit of which they are a part.

As to appellant's contention that he has no "burden" in regard to the second factor of *Gruber*, we note that the *Gruber* court specifically stated that "the non-custodial parent must show that resistance to the move stems from concern for the children and his or her relationship to

them." *Gruber v. Gruber,* 400 Pa.Super. at 186, 583 A.2d at 440. Thus, appellant did have a "burden" to sustain in the lower court with regard to proof of his motivation in resisting the relocation. The lower court found that appellant's motivation consisted at least in part of a desire to succeed against appellee. In support of this conclusion, the lower court cited appellant's complaints that he had been unable to obtain medical and educational information from appellee, although, according to the lower court, that information had in fact been provided to him. The lower court also cited evidence that prior to and after the parties' separation, appellant frequently did not actually spend time with the children, but instead occupied himself with his work, even during his periods of partial custody.

We do not find the lower court's conclusions in this regard unreasonable. As we have previously indicated, an appellate court, reviewing a lower court's order of custody, may determine whether the trial court's factual findings support its factual conclusions, but it may not interfere with those conclusions unless they are unreasonable and thus constitute a gross abuse of discretion. *McMillen v. McMillen,* supra, 529 Pa. at —— – ——, 602 A.2d at 847. The factual findings on which the lower court based its conclusion concerning appellant's motive in resisting the relocation have support in the record. The lower court's conclusion, based on those factual findings, is not unreasonable. Certainly, there is ample evidence of record supporting the existence of a substantial conflict between the parties. Considering that evidence along with the evidence cited by the lower court, we cannot say that the lower court committed a "gross abuse of discretion" in its determination that appellant's motive for resisting the relocation was motivated at least in part by a desire to prevail in the conflict with the children's mother.

Even if we were to find that the lower court erred in this conclusion, it would not alter our finding that appellant has satisfied the second criterion established in *Gruber* for assessing the feasibility of a relocation. *Gruber* clearly

provides that the focus in a relocation case is on the custodial family. *Gruber v. Gruber,* 400 Pa.Super. at 182–83, 583 A.2d at 438. Since appellee has satisfactorily established that her own motivation in desiring to effectuate the relocation is not suspect, the second factor of *Gruber* has been met. We therefore turn to the third factor set forth in the *Gruber* case, *i.e.,* the feasibility of creating substitute visitation arrangements to ensure a continuing, meaningful relationship between the children and the non-custodial parent. *Id.,* 400 Pa.Superior Ct. at 186, 583 A.2d at 440. In discussing this factor, the *Gruber* court noted:

> We recognize that, in many cases, former weekly visitation may have to give way to an altered schedule which allows for less frequent but more extended contact between parent and child. However, the necessity of shifting visitation arrangements to account for geographical distances will not defeat a move which has been shown to offer real advantages to the custodial parent and the children.

*Id.,* 400 Pa.Superior Ct. at 185, 583 A.2d at 439.

With regard to this factor, appellant contends that adequate visitation arrangements are not available. He argues that the evidence at trial did not support a finding that appellee is willing to cooperate and sacrifice in order to provide continuing, ongoing contact between appellant and the children. Appellant then cites various incidents from the past to support his argument that since appellee did not cooperate in granting him access to the children when they lived only a few miles apart, she surely will not do so when living a distance of three hundred miles away.

On this issue, the lower court concluded that the partial custody schedule could be adjusted to accommodate appellant. The trial judge cited the feasibility of travel between Webster, New York and Beaver County as well as the "ability and willingness" of appellee and her husband "to cooperate and sacrifice in order to provide continuing, ongoing contact between [appellant] and the children." (Opinion of April 17, 1991, at 28). The lower court also reasoned

that contact could be maintained because mother would be visiting with relatives in Beaver County on a regular basis and would also have to return for counseling. In addition, the court noted that it would be appropriate for appellant to travel to New York on occasion.

The order of custody eliminates appellant's partial custody of the children on Wednesday evenings. However, it continues to provide appellant with partial custody at least two weekends every month. In addition, appellant is permitted custody of the children for at least one day of any weekend when appellee is in Beaver County for the purpose of visiting relatives, and for one-half the time of which appellee is in that county for counseling purposes. The order also provides appellant with partial custody during one-half of every recess from school, three-fourths of every summer vacation, and alternating holiday weekends. There is also provision in the order for regular telephone contact. The record supports the fact that appellee and her new husband have indicated their willingness to cooperate to ensure appellant's continued access to the children. Apparently, the lower court found those statements to be believable and we will not interfere with the lower court's determination of credibility. Although the substitute visitation fashioned by the lower court is not identical to the previous partial custody arrangement, we think the schedule constitutes a "realistic, substitute visitation [arrangement] which will adequately foster an ongoing relationship between the child[ren] and the non-custodial parent." *Gruber v. Gruber*, 400 Pa.Super. at 185, 583 A.2d at 439. It has already been demonstrated that the move to Webster, New York will "offer real advantages to the custodial parent and the children." *Id.* Therefore, it becomes necessary to "shift" visitation arrangements so long as reasonable substitute visitation is available. *Id.* The lower court has fashioned a reasonable substitute schedule of partial custody. Since the move also offers real advantages to the custodial parent and the children, the third requirement of *Gruber* has been met. As the *Gruber* court stated,

The court should not insist that the advantages of the move be sacrificed and the opportunity for a better and more comfortable life style for the [custodial parent] and children be forfeited solely to maintain weekly visitation by the [non-custodial parent] where reasonable alternative visitation is available and where the advantages of the move are substantial.

*Id.*, 400 Pa.Superior Ct. at 186, 583 A.2d at 439–40 (citing *D'Onofrio v. D'Onofrio,* 144 N.J.Super. 200, 204–06, 365 A.2d 27, 29–30 (Ch. Div.), *aff'd,* 144 N.J.Super. 352, 365 A.2d 716 (App.Div.1976)).

■ Appellant next contends that the lower court erred in determining that one of his monthly weekends of partial custody must take place in New York. Appellant cites no authority in this regard and indicates that this matter is undergoing negotiation between the parties. While the lower court's opinion does not explicitly address this issue, we do not think it was unreasonable for the court to fashion an order which would require the children to travel to Beaver County from New York just one time per month rather than two. In awarding appellant partial custody in New York one weekend per month, the lower court afforded appellant the opportunity to continue the same amount of weekend partial custody as he was permitted prior to the move, while also giving him the chance to acquaint himself with the children's new surroundings. We do not see it as unreasonable or an abuse of discretion for the lower court to place the burden of travel upon appellant rather than on the children for one of appellant's two monthly weekends of partial custody.

For all of the above reasons, the order of April 17, 1991 is affirmed.

Order affirmed.