683 A.2d 1207

Robert A. GANCAS

v.

Barbara G. SCHULTZ, Appellant.

Superior Court of Pennsylvania.

Argued March 21, 1996.

Filed Aug. 20, 1996.

326

David S. Pollock, Pittsburgh, for appellant.

Karen L. Ferri, Murrysville, for appellee.

Before McEWEN, President Judge, and HUDOCK and HESTER, JJ.

PER CURIAM:

This appeal by appellant–Mother, Barbara Schultz, is from the May 15, 1995 order granting primary physical custody of the parties' daughter to appellee–Father, Robert Gancas, and

denying Mother permission to relocate with the child to New Jersey. We reverse and remand.

The parties met while they were students at the Pennsylvania State University and married on December 28, 1989. Both Mother and Father were in the United States Navy, initially stationed in San Diego and then in Japan, where they married. Father thereafter resigned his commission and sought civilian employment; Mother was transferred to Newport, Rhode Island, where they lived from December, 1988, until May, 1991. While there, one child, Elizabeth Gancas, was born of the marriage on March 22, 1989. In May, 1991, Mother was transferred to Pittsburgh, and Father obtained employment with Westinghouse Process Control Division as a software engineer. Mother was a lieutenant and a navy recruiter. Initially, the parties lived with Father's parents in Plum Borough, a suburb of Pittsburgh; they moved into their own home in the North Hills in October, 1991.

In late 1991 and early 1992, the parties tried to conceive a second child. In January, 1992, without warning, Father filed a complaint in divorce in which he sought, *inter alae,* custody of Elizabeth. On September 3, 1992, the parties executed a shared custody agreement. The marital home was sold, and Mother moved to a townhouse in the same area; Father relocated to the eastern suburbs near his parents. Under the shared custody agreement, Elizabeth resided with each parent approximately three and one-half days per week. The parties divorced on December 20, 1993.

In March, 1993, Mother requested a custody conciliation based upon her belief that the shared custody arrangement was too stressful for Elizabeth. Following a conciliation with counsel on April 21, 1993, the Honorable Lawrence W. Kaplan noted that with "both parties realizing that mother will have to relocate sometime next year," the shared arrangement would be maintained pending psychological and home evaluations. This relocation purportedly was Mother's transfer in the navy.

In May, 1994, Father agreed to relinquish primary physical custody of Elizabeth to Mother. The following month, Mother

became engaged to Bryan Schultz, a man she had known since childhood and whose family was close to her family in New Jersey. Mother also learned she was pregnant to Mr. Schultz in June, 1994. Based upon the realization that relocation to New Jersey was inevitable due to Mr. Schultz's job situation and the fact that Mother had set in motion the process for her resignation from the navy, Mother asked counsel to arrange legal proceedings after her marriage to Bryan Schultz to facilitate her move with Elizabeth to New Jersey. Mother and Mr. Schultz married on October 15, 1994. On November 17, 1994, Mother requested court approval to relocate with Elizabeth to New Jersey. In the meantime, upon learning of Mother's remarriage, Father requested his counsel to file a petition for special relief requesting that neither party be permitted to relocate from Allegheny County pending further order of court. Judge Kaplan instituted an interim shared custody arrangement, commencing when Father relocated from Plum Borough to the North Hills, and enjoined both parties from removing Elizabeth from Allegheny County pending a hearing, which was set for March, 1995. Father relocated to the North Hills, and Mother, although her husband lived in New Jersey, also remained in the North Hills.

Upon Father's relocation to the North Hills in January, 1995, Judge Kaplan instituted the interim shared custody arrangement, whereby Elizabeth spent two days with each parent followed by five days with each parent. A three-day custody hearing was held before Judge Kaplan on March 22–23 and May 9, 1995. At the conclusion of the third day of trial, the court recited its opinion into the record. As noted *supra,* the court denied Mother permission to relocate with Elizabeth and granted Father primary physical custody, with the parties sharing legal custody. This appeal followed.

Our scope of review is well-settled.

In reviewing a child custody order,

Our scope of review ... is of the broadest type; the appellate court is not bound by the deductions or inferences made by the trial court from its findings of fact, nor must the reviewing court accept a finding that has no competent

evidence to support it ... However, the broad scope of review does not vest in the reviewing court the duty or the privilege of making its own independent determination ... Thus, an appellate court is empowered to determine whether the trial court's incontrovertible factual findings support its factual conclusions, but it may not interfere with those conclusions unless they are unreasonable in view of the trial court's factual findings; and, thus, represent a gross abuse of discretion.

*Vineski v. Vineski,* 450 Pa.Super. 183, 186, 675 A.2d 722, 723 (1996).

 When either parent files a petition which raises the issue of whether it is in the best interest of a child to move outside of the jurisdiction, "a hearing must be held either before the move, or under exigent circumstances, within a reasonable time thereafter." *Plowman v. Plowman,* 409 Pa.Super. 143, 153, 597 A.2d 701, 706 (1991). If the parents are able to arrive at a mutual decision regarding a minor child's move from the jurisdiction, a hearing is not required. *Id.* A hearing is not required because Pennsylvania does not have an "anti-relocation statute" prohibiting a custodial parent from removing a child from the jurisdiction without the consent of the noncustodial parent or permission of the court. *See, e.g.,* N.J.S.A. 9:2–2; Ill.Rev.Stat. ch. 40, § 609 (1977); *see also* Wilder, Pa.Family Law Prac. and Proc. (3rd ed.), § 28–15, at 324. While Mother intended to file such a petition, Father filed his motion for special relief first. As the issue concerning relocation now was before the court, there was no reason for Mother to file a petition. *Plowman* makes it clear that either parent may raise the issue.

 In every relocation dispute, the court must consider the following interests.

[T]he custodial parent's desire to exercise autonomy over the basic decisions that will directly affect his or her life and that of the children; a child's strong interest in maintaining and developing a meaningful relationship with the noncustodial parent; the interest of the non-custodial parent in

sharing in the love and rearing of his or her children; and, finally, the state's interest in protecting the best interests of the children.

*White v. White,* 437 Pa.Super. 446, 450, 650 A.2d 110, 113 (1994), quoting *Gruber v. Gruber,* 400 Pa.Super. 174, 184, 583 A.2d 434, 438–39 (1990). When faced with the decision whether to permit a custodial parent to relocate at a geographical distance from the non-custodial parent, a trial court must consider these factors:

1. The potential advantages of the proposed move, economic or otherwise, and the likelihood the move would improve substantially the quality of life for the custodial parent and the children and is not the result of a monetary (sic) whim on the part of the custodial parent;

2. The integrity of the motives of both the custodial and noncustodial parent in either seeking the move or seeking to prevent it; and

3. The availability of realistic, substitute visitation arrangements which will foster adequately an ongoing relationship between the child and the noncustodial parent.

*White v. White, supra,* 437 Pa.Super. at 451, 650 A.2d at 113, quoting *Gruber v. Gruber, supra,* 400 Pa.Super. at 184–85, 583 A.2d at 439. The factors to be considered are refinements of the basic standard which remains the best interest of the child. *Lee v. Fontine,* 406 Pa.Super. 487, 594 A.2d 724 (1991); *see also* Pa.Family Law Prac. and Proc., *supra.* Moreover, the fact that considerable distance will increase the cost and logistical problems of maintaining contact between the child and the noncustodial parent does not necessarily preclude relocation when other factors militate in favor of it. *Id.*

We note that Father makes much of the fact that when he agreed to give Mother primary physical custody of Elizabeth in May, 1994, "because it was in [Elizabeth's] best interest," notes of testimony ("N.T."), 3/22/95, at 188, Mother did not disclose that she had been dating Bryan Schultz for the past two months. He implies that Mother attempted to perpetrate a ruse and trap him into agreeing to give Mother primary

physical custody. This is indicative of the manner in which Father addresses every situation involved with his child's custody: he and his counsel are extremely adversarial and exaggerate the effect of every action on Mother's part. In fact, referring to his relationship with Mother, Father stated at trial that "it is difficult for me to foresee that we will ever have an amicable relationship." N.T., 3/23/95, at 365. We do not find it deceitful that in May, 1994, Mother did not disclose to her ex-husband that she had developed a relationship with Mr. Schultz in the past two months. Mr. Schultz did not propose to Mother until June, and it was at that time that Mr. Schultz learned that Mother was pregnant. N.T., 5/9/95, at 8. Therefore, in May, 1994, when Father agreed to the custody change, Mother did not know she would relocate. Furthermore, Mother testified that she knew she would not be leaving Pittsburgh without a relocation hearing. N.T., 3/22/94, at 131. Father's preoccupation with this point is not warranted.

Mother raises the following issues:

I. Did the trial court err by placing a greater burden of proof upon the relocating parent, thereby raising a presumption disfavoring custody relocation?

II. Did the trial court err by failing to properly apply the *Gruber* criteria to determine whether relocation serves the child's best interests?

Mother's issue regarding the placement of the burden of proof relates to the trial judge's statement at the end of trial when he was reciting his opinion into the record. Rather than prepare a written opinion pursuant to Pa.R.A.P.1925(a), the trial judge instead chose to rely upon that statement. The court stated, "So who is the parent that you put the burden on when a move like this takes place, and generally it has to be the moving party, all other things being relatively equal." N.T., 5/9/95, at 238.

Father argues that Mother has waived this issue, characterizing it as the burden placed upon her as the moving party. At the start of trial, the court made reference to the fact that although the petition raising the issue of relocation

was filed by Father, Mother, as the party seeking relocation, would be required to proceed first. Mother did not object at this point; obviously, there was nothing to which she could object. Father's argument concerning waiver is rejected. Mother is instead focusing upon the burden placed upon her by the trial court to which it referred at the end of trial, when announcing the court's decision. Mother raised the issue in the statement of matters complained of on appeal. We find no waiver.

■ Father is confusing the issue Mother raises with the initial burden Mother bore, as pronounced in *Gruber v. Gruber, supra.*

> When a custodial parent seeks to relocate at a geographical distance and the non-custodial parent challenges the move, the custodial parent has the initial burden of showing that the move is likely to significantly improve the quality of life for that parent and the children.

*Id.,* 400 Pa.Super. at 186, 583 A.2d at 440. It matters not that Mother did not file her petition raising the issue of relocation before Father filed his petition. As the party seeking to relocate out of the jurisdiction with the minor child, Mother, pursuant to *Gruber,* bore the initial burden of showing the move would enhance her quality of life, and derivatively, that of Elizabeth. *See Kaneski v. Kaneski,* 413 Pa.Super. 173, 604 A.2d 1075 (1992).

The allocation of the various burdens in relocation cases was further addressed in *Gruber:*

> In addition, each parent has the burden of establishing the integrity of his or her motives in either desiring to move or seeking to prevent it. The custodial parent must convince the court that the move is not sought for whimsical or vindictive reasons. Likewise, the non-custodial parent must show that resistance to the move stems from concern for the children and his or her relationship to them.

*Gruber v. Gruber, supra,* 400 Pa.Super. at 186, 583 A.2d at 440.

■ It is clear that the trial court determined that Mother bore her burden of showing that the move likely would improve significantly the quality of her life. The trial court concluded:

> The mother is moving for a good reason on her part. Her husband has a good permanent job in New Jersey, they both have family there, they've known each other for years prior to their getting married and having their first child.... She isn't making this move just to get away from the father or to make it difficult for him.

N.T., 5/9/95, at 238. Thus, based upon the above statement, the court concluded that Mother's motives were pure. However, based solely upon the fact that Mother was seeking to relocate, the trial court determined that Father should have physical custody. The court stated:

> But the point is that but for that arrangement [the move to New Jersey], this child would still be in a position to share both parents. So who is the parent that you put the burden on when a move like this takes place, all other things being relatively equal. So for that reason, I would have to find that Elizabeth would continue to reside here in Allegheny County with her father....

*Id.* at 239. This is precisely what we stated in *Gruber* would not be allowed. Therein we stated, "Once again, we reiterate that a move sought to secure substantial advantage for the custodial parent and children *will not be disallowed simply because visitation cannot continue in the existing pattern. Gruber v. Gruber, supra,* 400 Pa.Super. at 186, 583 A.2d at 440 (emphasis added).

Clearly, the trial court determined that *all things were equal,* and since Mother was the party moving, she had to forfeit custody. It is that point of which Mother complains, arguing that the trial court, in effect, applied a presumption disfavoring relocation.

Such "restrictive lower court rulings that prohibit a child's relocation in order to preserve or enhance existing visitation schedules," are discussed in "The Relocation of Children and

Custodial Parents: Public Policy, Past and Present," an article to be published in *Family Law Quarterly.* The following observations are relevant:

Because there is a serious gap between popular perceptions and private realities concerning post-divorce parenting, custody orders that genuinely seek to serve children's interests may actually disserve them. This is often true when a parent with primary responsibility for the children's day-to-day case wishes to relocate.

As a result, custodial parents in many states are unable to make reasonable plans for themselves and their families (to accept a new job, to move closer to grandparents, to enroll in a college or graduate school program outside the local commute area, to escape hostility or violence directed at them or their children, to find affordable housing in a nearby community, to remarry someone from another community or state, or to accompany a new spouse on a job transfer) without placing the custody of their children seriously at risk. Unless they obtain the consent of their former spouses or lovers, they are routinely subjected to delays and litigational burdens—burdens greater than those imposed by the criminal law on those who wish to relocate but are subject to probation or parole supervision. Indeed, even if the parent who challenges a move is unqualified for or uninterested in obtaining custody, the custodial parent faces costly litigation. If commitments are made and kept in a timely fashion, whether as to an employer, a prospective spouse, a landlord or an educational institution, a loss of custody may result.

This state of the law provides inappropriate opportunities for abuses of power by former partners and is a serious disservice to children and to their primary caretakers. It has made the job of rearing children after parental separation or divorce far more financially and emotionally burdensome than sound policy requires or should condone.

It is also inconsistent with the reality of American geographic mobility. Each year approximately one American in five changes residences. According to 1983 rates, a

newborn American will probably move about 10.5 times during his or her lifetime, with approximately 3.8 of these moves transcending county boundaries. As recent cutbacks in defense jobs suggest, employer-initiated job transfers are an important reason behind this mobility. Faced with the economic worries of the post-divorce period, custodial parents require flexibility in their job-seeking strategies, both because of their own employment needs and, if they have remarried, as a result of the employment demands faced by their new spouses.

Carol S. Bruch & Janet M. Bowermaster, "The Relocation of Children and Custodial Parents: Public Policy, Past and Present," forthcoming in 30 *Family Law Quarterly* (Summer 1996), at 2–5 (footnotes omitted).

■ In the present case, once the trial court determined that the move to New Jersey would improve Mother's quality of life and was not the result of a momentary whim, and that the parties' motives [1] were pure, the trial court was obliged to "consider the availability of realistic, substitute visitation arrangements which will adequately foster an ongoing relationship" between Elizabeth and Father. *Gruber v. Gruber, supra,* 400 Pa.Super. at 185, 583 A.2d at 439. Instead, the trial court stopped its analysis of the factors and concluded that since Mother was impeding the custody arrangements theretofore in effect by moving, primary physical custody had to be placed in Father. This was error.

■ Intertwined with this issue, is Mother's second argument, that the trial court failed to determine whether Elizabeth's move to New Jersey with Mother was in the child's best interest. Again, we must agree with Mother. As we stated

1. While the trial court determined that Mother's move was not motivated by a desire to frustrate the partial custody rights of Father, it should have determined whether Father's motives in resisting relocation were inspired by a legitimate desire to continue his relationship with Elizabeth. *See Gruber v. Gruber, supra,* 400 Pa.Super. at 185, 583 A.2d at 439 ("Next, the court must establish the integrity of the motives of both the custodial and non-custodial parent in either seeking the move or seeking to prevent it"); *see also Kaneski v. Kaneski, supra.* Within the context of her second issue, Mother complains about the absence of such a conclusion.

above, after analyzing the first two factors set forth in *Gruber*, the trial court simply concluded that since all considerations were equal, custody had to be placed in Father because Mother was upsetting the status quo. Instead, the case law of this Commonwealth required the trial court to analyze the potential advantages of Mother's proposed move to New Jersey versus Father's relocation to Plum Borough or Murrysville. Father testified that he wanted to relocate to Plum Borough, Allegheny County, or Murrysville, Westmoreland County. N.T., 3/22/95, at 207. "A custody determination requires a process of comparing and weighing the relevant facts of the competing custodial environments." *Rowles v. Rowles*, 542 Pa. 443, 449, 668 A.2d 126, 129 (1995).

Once the trial court utilized the three factors set forth in *Gruber*, "these considerations must then be factored into the ultimate consideration of the court, which is to determine what is in the best interests of the child." *Plowman v. Plowman, supra*, 409 Pa.Super. at 154, 597 A.2d at 707; *see also Lee v. Fontine, supra*, 406 Pa.Super. at 489–90, 594 A.2d at 726 ("While we acknowledge the refinements posited in *Gruber* in relocation cases, they do not create a new standard and we hasten to stress the polestar of our analysis in this case, just as it was in *Gruber* and a legion of prior custody cases, remains the best interests of the child...."). In failing to determine Elizabeth's best interest, Mother contends the trial court failed to weigh certain important considerations. We agree.

For example, Mother contends that the trial court failed to consider that absent compelling reasons to the contrary, it is the policy of this Commonwealth to raise siblings together whenever possible. *Pilon v. Pilon*, 342 Pa.Super. 52, 492 A.2d 59 (1985). Moreover, this policy applies equally to half siblings. *Wiskoski v. Wiskoski*, 427 Pa.Super. 531, 629 A.2d 996 (1993), citing *In re Davis*, 502 Pa. 110, 465 A.2d 614 (1983). Thus, Mother contends the trial court failed to consider that Elizabeth had developed a close relationship with her

brother, Brandon. Mother presented evidence of this close relationship at trial. N.T., 3/22/95, at 29–31.

■ Similarly, Mother asserts the trial court failed to consider that Elizabeth was baptized in the Catholic faith. Mother testified that she takes Elizabeth to church whenever Elizabeth is with her. N.T., 3/22/95, at 29. Father, an admitted agnostic, does not attend church. *Id.* at 305; reproduced record at 819a. Religion, while not determinative, "is an important matter and should be given some consideration in child custody matters...." *Boylan v. Boylan,* 395 Pa.Super. 280, 283, 577 A.2d 218, 219 (1990). *See also* Pa. Family Law Prac. and Proc., *supra,* § 28–13, at 321 ("It is appropriate for the court to consider religious practices in custody disputes because the child's spiritual welfare is a consideration in custody cases"); *see also Stolarick v. Novak,* 401 Pa.Super. 171, 584 A.2d 1034 (1991) (Religion, while not determinative, is important matter and should be given consideration in child custody matters). The trial court did not consider this point.

Another factor Mother contends was overlooked by the trial court is a conclusion concerning which party would be more cooperative in promoting partial custody for the noncustodial parent. We previously noted Father's adversarial nature. Our review of the record reveals that Mother, while acting unilaterally at times and exhibiting some degree of an uncooperative spirit, more often sought to resolve disputes through negotiation, while Father, exhibiting at least the same degree of uncooperativeness, indicated his preference for court intervention. N.T., 3/22/95, at 368, 378.

We conclude, based upon the record presented, that the instant matter must be reversed and remanded. To recap, the highly respected trial court made the following findings which are supported by the testimony:

1. The instant matter has been "a very bitter disagreement between the parties."

2. Both parents offer much to Elizabeth; their parenting styles, while not comparable, are comparable in quality.

3. Both parents love Elizabeth and have played a major role in her development; Mother is more structured, and Father is more spontaneous. Both parents are devoted to the child.

4. Dr. Rosenblum supports Mother's ability and role.

5. Dr. Fischer and Judith Krynski support Father's ability and role.

6. The parties' relationship with Elizabeth "has been pretty much the same."

7. Elizabeth has "no major problems from an emotional standpoint."

8. Mother's husband is "a lovely person," and "Father admits that he can't find anything to even jab him about," which also speaks well for Father.

9. No matter where Elizabeth lives, she "is going to be in pretty good shape."

10. If the parties resided in the same school district, a shared custody order would have been entered.

11. Mother is not moving just to make things difficult for Father.

N.T., 5/9/95, at 235–38.

As noted above, it is at this point that the trial court should have considered the availability of realistic, substitute visitation arrangements which would adequately foster an ongoing relationship between Elizabeth and Father. This, the court did not do. Instead, it awarded primary custody to Father based upon the *sole* fact that Mother was moving, a move it already determined to be in Mother's interest. Finally, the trial court failed to consider "all factors which legitimately have an effect upon the child's physical, intellectual, moral and spiritual well-being." *Lee v. Fontine, supra,* 406 Pa.Super. at 488, 594 A.2d at 725, citing *Zummo v. Zummo,* 394 Pa.Super. 30, 574 A.2d 1130 (1990). Such a determination is the ultimate consideration of the court: what is in the best interests of the child.

Case remanded for proceedings consistent with this opinion. Jurisdiction relinquished.