Timothy E. **PERROTT**, Appellee,

v.

Debora A. **PERROTT**, Appellant.

Superior Court of Pennsylvania.

Argued Feb. 12, 1998.

Filed June 22, 1998.

---

Lisa L. Veto, Pittsburgh, for appellant.

John P. Orsini, Pittsburgh, for appellee.

Before FORD ELLIOTT, MUSMANNO and HESTER, JJ.

OPINION PER CURIAM:

This appeal by appellant-Mother, Debora Perrott, is from the May 2, 1997 order denying her petition to relocate with the parties' minor children within the state as the result of her job promotion. We are constrained to reverse.

Mother and appellee-Father, Timothy Perrott, were married on September 26, 1987. Two children were born of the marriage: Zachary, age seven, and Abigail, age four as of May 2, 1997. Notes of Testimony ("N.T."), 5/2/97, at 5.[1] The parties entered into an interim settlement agreement

---

1. · The children's birth dates do not appear in the   record.

("agreement") on January 24, 1996, which was filed in the common pleas court on March 18, 1996, after Father filed a complaint in divorce on February 1, 1996. The agreement, which was incorporated as an order of court on January 24, 1997, dealt with, *inter alia,* the custody of the children. The agreement provides that the parties share legal custody. Mother has primary physical custody and Father has partial physical custody on Wednesday evenings from 5:30 p.m. until 8:00 p.m. and Friday evenings at 5:00 p.m. until Saturday evening at 8:00 p.m.

On April 16, 1997, Mother filed an emergency petition for relocation requesting an expedited hearing.[2] A hearing was held on May 2, 1997, following which the common pleas court entered the order appealed from which provides as follows:

> AND NOW, this 2nd day of May, 1997 following a hearing on mother's Petition for Relocation, it appearing that mother's request is based upon her desire to obtain a better position with her company, but she is not being required to give up her current position; the parties are life-long residents of this area, together with their extended families; the children have been enjoying contact with their father on a regular basis and that the best interests of the children will be served as provided hereafter;
>
> NOW, THEREFORE, it is ORDERED, ADJUDGED and DECREED that mother's Petition for Relocation is hereby denied.

Order of court, 5/2/97. This timely appeal followed entry of that order.

Our scope of review is well settled. In reviewing a child custody order,

> Our scope of review ... is of the broadest type; the appellate court is not bound by the deductions or inferences made by the trial court from its findings of fact, nor must the reviewing court accept a finding that has no competent

evidence to support it ... However, the broad scope of review does not vest in the reviewing court the duty or the privilege of making its own independent determination ... Thus, an appellate court is empowered to determine whether the trial court's incontrovertible factual findings support its factual conclusions, but it may not interfere with those conclusions unless they are unreasonable in view of the trial court's factual findings; and, thus, represent a gross abuse of discretion.

*Vineski v. Vineski,* 450 Pa.Super. 183, 186, 675 A.2d 722, 723 (1996).

When either parent files a petition which raises the issue of whether it is in the best interest of a child to move outside of the jurisdiction, "a hearing must be held either before the move, or under exigent circumstances, within a reasonable time thereafter." *Plowman v. Plowman,* 409 Pa.Super. 143, 153, 597 A.2d 701, 706 (1991). If the parents are able to arrive at a mutual decision regarding a minor child's move from the jurisdiction, a hearing is not required. *Id.* A hearing is not required because Pennsylvania does not have an "anti-relocation statute" prohibiting a custodial parent from removing a child from the jurisdiction without the consent of the noncustodial parent or permission of the court. *See, e.g.,* N.J.S.A. 9:2–2; Ill.Rev. Stat. ch. 40, § 609 (1977); *see also* Wilder, Pa.Family Law Prac. and Proc. (3rd ed.), § 28–15, at 324. While Mother intended to file such a petition, Father filed his motion for special relief first. As the issue concerning relocation now was before the court, there was no reason for Mother to file a petition. *Plowman* makes it clear that either parent may raise the issue.

In every relocation dispute, the court must consider the following interests.

> [T]he custodial parent's desire to exercise autonomy over the basic decisions that will directly affect his or her life

---

**2.** While the record contains a petition for modification of custody and motion for a relocation hearing verified by Father on April 9, 1997, that petition lacks a filing date stamp from the prothonotary's office. The common pleas court docket sheet does not reflect that it was filed. However, the trial court obviously was aware of it, *see* N.T., 5/2/97, at 3 and trial court opinion, 8/13/97, at 1.

and that of the children; a child's strong interest in maintaining and developing a meaningful relationship with the non-custodial parent; the interest of the non-custodial parent in sharing in the love and rearing of his or her children; and, finally, the state's interest in protecting the best interests of the children.

*White v. White,* 437 Pa.Super. 446, 450, 650 A.2d 110, 113 (1994), quoting *Gruber v. Gruber,* 400 Pa.Super. 174, 184, 583 A.2d 434, 438–39 (1990). When faced with the decision whether to permit a custodial parent to relocate at a geographical distance from the non-custodial parent, a trial court must consider these factors:

1. The potential advantages of the proposed move, economic or otherwise, and the likelihood the move would improve substantially the quality of life for the custodial parent and the children and is not the result of a monetary (sic) whim on the part of the custodial parent;

2. The integrity of the motives of both the custodial and noncustodial parent in either seeking the move or seeking to prevent it; and

3. The availability of realistic, substitute visitation arrangements which will foster adequately an ongoing relationship between the child and the noncustodial parent.

*White v. White, supra,* 437 Pa.Super. at 451, 650 A.2d at 113, quoting *Gruber v. Gruber, supra,* 400 Pa.Super. at 184–85, 583 A.2d at 439. The factors to be considered are refinements of the basic standard which remains the best interest of the child. *Lee v. Fontine,* 406 Pa.Super. 487, 594 A.2d 724 (1991); *see also* Pa. Family Law Prac. and Proc., *supra.* Moreover, the fact that considerable distance will increase the cost and logistical problems of maintaining contact between the child and the noncustodial parent does not necessarily preclude relocation when other factors militate in favor of it. *Id.*

*Gancas v. Schultz,* 453 Pa.Super. 324, 683 A.2d 1207, 1209–10 (1996).

Testimony at the May 2, 1997 hearing revealed the following. Mother, who has a master's degree in business administration, is a regional vice-president of NovaCare, Inc., covering Michigan, Ohio, and western Pennsylvania in the contract rehabilitation division which deals with nursing home rehabilitation. N.T., 5/2/97, at 6. While she has held that position for one and one-half years, she has been with the company for thirteen years. *Id.* at 7. Mother explained her promotion as follows:

The opportunity is in the occupational health service part of the business. It's actually the vice-president of that division. The opportunity is significant, simply because it is going to help start to coordinate all three divisions, the contract rehab, the outpatient, and the integrated delivery service system. Right now I know a whole lot about nursing home rehab but I don't know anything about the other branches of rehab, and the reason that that is so significant is where health care is going now is towards integrated systems. Managed care is requiring and demanding that one provider have the expertise in a number of areas. They don't want to talk to one provider when they have a nursing home case and one provider when they have outpatient needs. They want to talk to someone that understands all of health care.

Nova Care's position is to be able to become a company that can go to a managed care organization and say, "We can handle all of your rehab needs with our one company," and if you want to be a manager in the future with Nova Care, you do need to understand and be able to manage all parts of the health care business.

. . . .

It is actually a two grade level promotion, which is very significant.

N.T., 5/2/97, at 8–9. When asked why she wanted to accept the promotion, Mother responded:

Well, number one, it certainly is job security. As you can see, our outpatient division recently merged in the last year, so the orthotics, prosthetics division and the outpatient rehab division merged, and again, their goal is to have all of the divisions

become one, streamline managers, streamline overhead costs, and they are slowly merging. As a matter of fact, the benefits programs from all three divisions were merged in 1997 in preparation for the merger of all the divisions. So job security for me is certainly one of the factors, because as we merge, I need to be a manager who knows about all of the businesses.

Certainly another is it's a fabulous career opportunity. It's a once-in-a-lifetime job to head up the [occupational] health business for a national company.

. . . .

And third, it is a significant financial opportunity as well for me and the children.

*Id.* at 9–10.

Mother also testified that the promotion would result in a significant increase in her income. Presently, Mother's employer matches contributions to her IRA and a tax-free college savings fund by thirty percent. The promotion provides for a corporate match of $.70 for every dollar. *Id.* at 10–11. Mother's salary and bonus potential also will double from $90,000 per year at the date of separation in January, 1996, to $180,000. *Id.* at 58, 62.

Father has his juris doctor degree. At the time of separation he worked for a Pittsburgh law firm which he was asked to leave. *Id.* at 158. At the time of the hearing, Father was not practicing law but was working for Three Rivers Aluminum Company (Traco) as a manager of customer service earning approximately $57,000 per year. *Id.* at 97–102.

The trial court began its *Gruber* analysis as follows:

As found by the court, Mother's request to relocate was based upon her desire to obtain a better position with her company. Mother, who is employed as a regional vice president with the contract services division of Nova Care, earning in excess of $120,000 gross income in 1996, expressed her desire to relocate to the Wayne, PA area to accept a promotion at her company's headquarters in the King of Prussia, PA area. (TR. 5–9) Mother testified that she wanted to accept the position as it provided her with job security and a significant financial and career opportunity. (TR. 10). The move would afford her the opportunity to make close to $180,000 per year plus increased benefits. (TR. 62, 10–11)

While Mother's motivation in making the move is not an issue nor is the move viewed by the court as a momentary whim on Mother's part, Mother failed to show that the move would *substantially improve* the quality of life for herself and the children. On direct examination and in response to the query as to what would happen should she not accept the employment "opportunity", Mother testified that if she did not accept the offered position that she did not know if she would be asked again. (TR. 21) The record is devoid of any testimony reflecting that the move was mandatory or that Mother would lose her current employment. Consequently, the court found that the employment move was elective and not involuntary. Mother admitted on cross examination that she was not assured job security just by making the move. (TR. 67) When questioned on cross examination about what benefits she believed her increased income would provide the children, Mother responded that she could place more money in their college fund and take better vacations with them. (TR. 84) Mother already earns a six-figure income and has placed for the children over $50,000 in a college fund through her employer at her current benefit level. (TR. 67–68)

It has been held that a custodial parent may satisfy the first prong of the *Gruber* test by showing the economic benefit of a move to herself, which flows indirectly to the children. *Kaneski v. Kaneski*, 413 Pa.Super. 173, 604 A.2d 1075 (1992). In *Kaneski*, the custodial mother was seeking to relocate so that her current husband, who was unemployed and then only temporarily employed, could accept permanent and significant employment which would enhance the family unit's financial situation. The instant case, however, can be distinguished. Mother is currently em-

ployed and already earning a substantial salary. The proposed move is voluntary and she will not lose her job for not accepting the new position. Finally, while the children may have larger college funds and better vacations if Mother accepted the new position, the court is not persuaded that the move would substantially improve the quality of life for Mother and the children from a financial standpoint.

Trial court opinion, 8/13/97, at 3–4.

Mother argues that the trial court erred in relying on the fact that the record was devoid of testimony that Mother would lose her current employment if she declined the promotion and the resultant move to eastern Pennsylvania. We agree with this assessment. It is clear that this was the overriding factor upon which the trial court relied in making its determination that the move would not substantially improve the quality of life for Mother and the children. Moreover, we disagree with the trial court's representation that "Mother's request to relocate was based upon her desire to obtain a better position with her company." *Id.* at 3. Rather, it is clear that Mother's request to relocate was based upon her desire to maintain her status as a viable managerial candidate in the ever-changing health care arena. Aside from the financial benefits of the promotion, Mother's testimony at the hearing made clear that given the direction of health care as it impacts the services her company provides, knowledge of all aspects of the business is crucial to her job security. Mother's testimony quoted above emphasized that she presently knows much about one portion of Nova Care's business, but she lacks managerial knowledge about other divisions. Mother stated that in order to remain in a managerial position, "as we merge, I need to be a manager who knows about all of the businesses." N.T., 5/2/97, at 10. Given that the promotion offered Mother the opportunity to manage areas of Nova Care where she presently lacks expertise, we cannot agree that the record supports the conclusion that the move would not substantially improve Mother's quality of life, as found by the trial court. Indeed, it is quite clear that Mother is the primary financial support of the children. *Id.* at 58, 98. Her continued vitality in that role requires her to maintain and expand the skills and knowledge which will keep her competitive as a manager within her company.

■ Further, we also agree with Mother that the trial court's focus on the fact that Mother will not lose her job if she does not accept the promotion is not the relevant inquiry. We believe the analysis should not be whether adverse consequences flow from declining the offer of advancement, but rather, what positive consequences are derived from the proposed move. Moreover, the trial court stated, "Mother admitted on cross examination that she was not assured job security just by making the move. (TR.67)." Trial court opinion, 8/13/97, at 4. The record does not support such a conclusion. Counsel for Father asked, "When you say that one of the opportunities this move would provide you for your career is job security, you don't know that, do you?" N.T., 5/2/97, at 67. Mother responded, "Based on the company's strategic plan and based on what they are requesting manager's of my level to do, and that is to gain experience in the other lines of business, I have drawn that conclusion." *Id.*

This testimony does not support the conclusion by the trial court that Mother "admitted ... she was not assured job security just by making the move." Trial court opinion, 8/13/97, at 4. Mother consistently stated on direct and cross-examination that based on her observations, in order to remain a viable managerial candidate within the company for which she had worked for the past thirteen years, she had to develop expertise in all aspects and all divisions of the business, and she presently lacked that experience. Acceptance of the promotion was going to provide it. We believe that the trial court's conclusion that the proposed move would not substantially improve the quality of life for Mother, and therefore derivatively for the children, focusing as it did on the fact that declining the promotion would not cause Mother to "lose her current employment," trial court opinion, 8/13/97, at 4, is not supported by the record. The *Gruber* court admonished that

In terms of the best interests of the child the primary physical custody family must be viewed as the family central and most important to the child's best interests.

. . . .

In determining the best interests of the child we must, therefore, focus on the primary custodial family. "What is advantageous to the unit as a whole, to each of its members individually and to the way they relate to each other and function together is obviously in the best interests of the children." *D'Onofrio [v. D'Onofrio]*, 144 N.J.Super. [200] at 204–06, 365 A.2d [27] at 29–30 [Ch.Div.1976].

*Gruber v. Gruber, supra* 583 A.2d at 438.

█ Since we have concluded that the record supports the conclusion that the move would improve substantially the quality of life for the primary custodial family, the fact that the trial court was "unpersuaded that the non-financial quality of life for Mother and the children would substantially be improved by the move," trial court opinion, 8/13/97, at 4, is not an impediment to the satisfaction of the first *Gruber* criterion. In *Kaneski v. Kaneski, supra,* we stated,

We do not accept appellant's argument that there must be demonstrated a separate and distinct non-economic benefit to satisfy the first criterion of *Gruber*. While the *Gruber* court held that such other benefits must not be ignored or overlooked, it did not require that a move which would significantly improve the quality of life on an economic basis be precluded because other less tangible factors were lacking.

*Id.* 604 A.2d at 1078–79. Thus, since the record supports the conclusion, contrary to the trial court's determination, that Mother satisfied the first prong of the *Gruber* test, we must look to the other two prongs. Even though the trial court held that Mother did not satisfy the first prong, it went on to address the remaining considerations in the *Gruber* analysis. It stated the following:

[T]he second and third prongs of the analysis are easily addressed. In examining the integrity of the motives of both the custodial and the non-custodial parent in either seeking the move or seeking to prevent the move, the court found, as previously discussed and as reflected in its May 2, 1997 order, that Mother's request for relocation was based upon her desire to obtain a better position with her company. There was no finding that Mother was moving in order to defeat Father's custodial interests. Similarly, while Mother testified that she felt Father resented her career advancement (TR. 47), Father's testimony was convincing that his motivation in opposing Mother's request for relocation was in the best interests of the children. (TR. 132, 134–136)

To complete the *Gruber* analysis, the final area of examination is the availability of realistic substitute visitation arrangements which will adequately foster an ongoing relationship between the children and the non-custodial parent. It is well-settled that this factor alone cannot defeat a requested relocation move where it has been shown to offer real advantages to the custodial parent and children. *Gancas v. Schultz*, 453 Pa.Super. 324, 683 A.2d 1207 (1996). However, in the instant case the court was not convinced that there were any substantial advantages warranting the move, it appearing Father has been substantially involved with the children. As in most custody relocation cases, Mother proposed less frequent but more extended contact between father and the children, while Father advocated that his current contact and involvement in the children's activities on a day-to-day basis continue.

Trial court opinion, 8/13/97, at 5–6.

Clearly, then, the trial court determined that neither Mother in seeking relocation nor Father in challenging relocation were doing so in an effort to defeat the other's custodial interests. Thus, the second prong of *Gruber* is satisfied.

Finally, as to the availability of realistic, substitute visitation arrangements, the third prong of the *Gruber* analysis, the trial court herein referred to them but did not analyze them. Mother proposed a partial custody arrangement which would enable Father to spend a substantially equivalent amount of time with the children to that which he cur-

rently spends, if not more. Mother offered to travel to Pittsburgh one weekend a month so that Father and his parents could spend the entire weekend with the children. Additionally, Mother offered to meet Father half way between Pittsburgh and Philadelphia, possibly at Father's sister home near Harrisburg, so Father could take the children with him for another entire weekend. N.T., 5/2/97, at 38–39. Mother also would work with Father to develop an appropriate vacation and holiday schedule, such as extended summer, Christmas, and spring break visits. *Id.* at 38–42. Mother stated,

> I feel very strongly that the children love their father and I know he loves them, and I need to work to make sure that I can come up with something that would work and give him similar time, if not more, with the children.

*Id.* at 38. As we stated,

> We recognize that, in many cases, former weekly visitation may have to give way to an altered schedule which allows for less frequent but more extended contact between parent and child. However, the necessity of shifting visitation arrangements to account for geographical distances will not defeat a move which has been shown to offer real advantages to the custodial parent and children.

*Gruber v. Gruber, supra* 583 A.2d at 439. Clearly, substitute arrangements which adequately foster an on-going relationship between Father and the children have been proffered.

Order reversed and case remanded for proceedings consistent with this opinion. Jurisdiction relinquished.