Brian E. BURKHOLDER, Jr., Appellant

v.

Brenda J. BURKHOLDER, Appellee.

Superior Court of Pennsylvania.

Argued Oct. 24, 2001.
Filed Jan. 10, 2002.

Erik J. Conrad, Allentown, for appellant.

Robin A. Spishock, Stroudsburg, for appellee (submitted).

Before: JOHNSON, TODD, and KELLY, JJ.

TODD, J.

¶ 1 Brian E. Burkholder ("Father") appeals the February 12, 2001 Order of the Court of Common Pleas of Monroe County denying his Complaint for Custody and Petition for Special Relief and granting the Petition for Relocation of Brenda J. Burkholder ("Mother"). Following our review of the record before us, and for the reasons that follow, we affirm.

¶ 2 The relevant facts and procedural history adduced from the record are as follows. Mother and Father were married in February 1993, and divorced in October 2000. They are the parents of two children, Austin, age six, and Ashley, age four. In September 1999, the parties separated and Mother moved with the children to Ocklawaha, Florida without Father's consent. Father remained in Stroudsburg, Pennsylvania and on October 7, 1999, filed the custody complaint, as well as a petition for special relief seeking the immediate return of the children from Florida to Pennsylvania. On October 12, 1999,[1] the Honorable Jerome P. Cheslock of the Monroe County Court of Common Pleas entered an order requiring the children's immediate return to Pennsylvania. Mother then filed a petition for special relief in Pennsylvania requesting that the children be permitted to remain in her custody pending a full custody/relocation hearing. She attached a copy of a Temporary Restraining Order, which the Monroe County Court of Common Pleas considered to be the equivalent of a Protection From Abuse Order ("PFA") in Pennsylvania, that she had obtained in Florida as a result of threats and harassment by Father. Father did not object to the Florida Restraining Order and, as a result, Judge Cheslock issued a superceding order on November 3, 1999, awarding primary custody of the children to Mother in Florida.

¶ 3 On December 10, 1999, the parties attended a custody conference in Pennsylvania, following which the trial court entered an order on December 14, 1999, permitting Mother to retain primary custody of the children in Florida. A subsequent conference was conducted on June 21, 2000, after which the trial court entered an order granting Father temporary custody from July 14, 2000 until August 4, 2000. On August 24, 2000, Father filed a motion for a full evidentiary custody/relocation hearing, which was conducted on November 22, 2000, before the Honorable Margherita Worthington.

---

1. The trial court's Opinion of February 12, 2001 incorrectly states that this Order was entered October 12, 2000.

¶ 4 At the hearing, the trial court heard extensive testimony from Mother, Father, Mother's paramour, Rex Shriver, Mother's sister, Father's mother, Father's sister, Austin and Ashley (together in chambers), and Mother's 14–year–old son from a previous relationship, Randy Getz (also in chambers). The court also heard testimony and received the results of court-ordered home studies and psychological evaluations of both parties into evidence. The evidence revealed that Father is 32 years old and lives in Stroudsburg. He has a high school equivalency degree and owns his own contracting company, from which he derives a gross annual income of approximately $100,000. Father resides in a two-bedroom trailer, located on three acres of land, next to his mother, who owns a five-bedroom house. Father testified that he and the children resided in his mother's home during their visit in the summer of 2000, and that they would return to live there if he were awarded primary physical custody. The home study offered into evidence at the custody hearing indicated that the home would suit adequately the needs of Father and the children.

¶ 5 The evidence further revealed that Mother is 35 years old and lives with her paramour, Rex Shriver and her son, Randy Getz, and the parties' two children. She, too, has an equivalency degree and owns a landscaping business with Shriver from which they derive a net monthly income of between $700 and $1,200. They reside in a three bedroom, two bathroom trailer situated on 3.8 acres of land. The home study reflected that the home was meticulously well-kept with ample room for the family. The trial court determined that this residence, like that of Father, was sufficient to meet the needs of Mother and the children. (Trial Court Opinion, 2/12/01, at 5.)

¶ 6 Mother, Rex Shriver and Randy Getz each testified that the children are happier and better-adjusted since their move to Florida. The children expressed to the trial court in chambers that they are happy living in Florida with their mother and they enjoy school. Mother testified that her mother and brothers live near their home and the children see their grandmother and uncles frequently. Mother further testified that when she first moved to Florida, she briefly worked as a waitress and now works running the landscaping business with Shriver.

¶ 7 Testimony further established that Father had a history of difficulty with anger management and was extremely controlling of Mother and the children. Mother testified that she had not worked while living in Pennsylvania because Father would not permit her to. Mother explained that she had moved to Florida to escape Father's abusive and controlling behavior and that, on numerous occasions during their marriage, he had threatened to kill her. The trial court, in its Opinion, noted that Mother previously had sought three PFA's against Father and that Father also had been arrested for simple assault three years earlier. (*Id.* at 11.) Judge Worthington further correctly noted that, pursuant to 23 Pa.C.S.A. § 5303, she is required to consider Father's history in her decision regarding custody. (*Id.*)

¶ 8 At the hearing, Mother described that she attempted to work out her problems with Father for a long period of time before moving to Florida, but was unable to do so. She testified that she was unable to convince Father to control his temper and finally determined that it would be in the children's best interest to leave Pennsylvania and go to live near her family. She described that after she moved with the children to Florida, Father continually harassed and threatened her by telephone,

causing her to seek the Florida Temporary Restraining Order. She expressed the opinion, which the trial court found credible, that she can offer the children a better life in Florida than Father can in Pennsylvania.

¶ 9 Father testified that he wants the children to reside in Pennsylvania so that he can maintain strong relationships with them through frequent contact. He further testified that he fears that the distance between the children and him would harm his relationships with them.

¶ 10 Following a thorough review of the evidence and testimony of both parties in light of the proper standards of review both for custody determination, as well as relocation, the trial court issued a comprehensive opinion and order denying Father's petition for primary custody and determining that Mother is more suitable to be the primary custodial parent. The judge further granted Mother's petition for relocation and ordered that the parties share legal custody of the children. Pursuant to this order, although Mother is to be the primary custodial parent, Father is to have significant periods of partial custody during various school and summer vacations.

¶ 11 In his timely appeal, Father presents the following questions for our review:

A. DID THE TRIAL COURT ERR IN CHANGING ITS COURT ORDER WHICH WOULD HAVE REQUIRED THE MINOR CHILDREN INVOLVED TO BE RETURNED TO PENNSYLVANIA PENDING ADDITIONAL COURT PROCEEDINGS WHEN SUCH CHANGE WAS BASED SOLELY ON THE RELOCATING PARENT OBTAINING A PROTECTION FROM ABUSE ORDER IN HER STATE OF DESTINATION?

B. DID THE TRIAL COURT ERR IN ALLOWING A RELOCATION WITH THE MINOR CHILDREN INVOLVED FOR A PERIOD OF FOURTEEN MONTHS BEFORE HOLDING A HEARING ON SUCH RIGHT TO RELOCATE?

C. DID THE TRIAL COURT ERR IN FAILING TO DETERMINE THAT THE DEFENDANT HAD NOT MET A PREVAILING FACTOR TO BE CONSIDERED IN A RELOCATION PROCEEDING; THAT BEING AN IMPROVEMENT OF THE CHILDREN'S LIVES AS A RESULT OF SUCH RELOCATION?

D. DID THE TRIAL COURT ERR IN NOT CONSIDERING THE CIRCUMSTANCES OF THE PARTIES AT THE TIME OF THE REQUESTED RELOCATION RATHER THAN A PERIOD OF TIME FOURTEEN MONTHS LATER?

E. DID THE TRIAL COURT ERR IN FAILING TO DETERMINE THAT THE DEFENDANT HAD NOT MET A PREVAILING FACTOR TO BE CONSIDERED IN A RELOCATION PROCEEDING; THAT BEING A PURE MOTIVE OF THE PARTY SEEKING RELOCATION?

F. DID THE TRIAL COURT ERR IN NOT FINDING THAT THE FAMILY CONTACTS OF THE MINOR CHILDREN INVOLVED WERE STRONGER IN PENNSYLVANIA THAN IN THE STATE IN WHICH RELOCATION WAS SOUGHT?

(Appellant's Brief, at 8.)

¶ 12 Our standard of review in considering child custody issues is well-settled:

On appeal, our scope of review is broad in that we are not bound by deductions and inferences drawn by the trial court from the facts found, nor are we required to accept findings which are wholly without support in the record. On the other hand, our scope of review does not authorize us to nullify the fact-finding function of the trial court in order to substitute our judgment for that of the trial court. Rather, we are bound by findings supported in the record, and may reject conclusions drawn by the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

*Anderson v. McVay*, 743 A.2d 472, 474 (Pa.Super.1999) (citations omitted). Furthermore, we consistently have held that the most important concern in a child custody matter is what is in the best interest of the child, considering all factors legitimately affecting the child's physical, intellectual, moral and spiritual well-being. *Swope v. Swope*, 455 Pa.Super. 587, 591, 689 A.2d 264, 265 (Pa.Super.1997).

■ ¶ 13 In permitting Mother to relocate to Florida with the children and denying Father's petition for custody, the trial court properly applied the three-pronged test enunciated by this Court in *Gruber v. Gruber*, 400 Pa.Super. 174, 583 A.2d 434 (Pa.Super.1990), to be applied in determining whether a custodial parent may relocate outside the county where a non-custodial parent remains. This test calls for an analysis of:

[1] the potential advantages of the proposed move and the likelihood that the move would substantially improve the quality of life for the custodial parent and the children and is not the result of a momentary whim on the part of the custodial parent;

* * *

[2] the integrity of the motives of both the custodial and non-custodial parent in either seeking the move or seeking to prevent it; [and]

* * *

■ [3] the availability of realistic, substitute visitation arrangements which will adequately foster an ongoing relationship between the child and the non-custodial parent.

*Gruber*, 400 Pa.Super. at 184–85, 583 A.2d at 439. To be permitted to retain custody, the parent seeking to relocate must prove that each of the above prongs has been met. *Id.* Furthermore, these factors must be applied with the backdrop of the aforementioned objective of determining the best interests of the child. *Anderson*, 743 A.2d at 474.

¶ 14 In *Thomas v. Thomas*, 739 A.2d 206 (Pa.Super.1999), this Court determined that the factors outlined in *Gruber* should also be considered in a shared custody case. *Id.* at 209. There, we held that with regard to family units, the trial court should look to "[w]hat is advantageous to the unit as a whole, to each of its members individually and to the way they relate to each other and function together" such that the best interests of the child may be effectuated. *Id.* at 210 (*quoting Perrott v. Perrott*, 713 A.2d 666, 671 (Pa.Super.1998)).

■ ¶ 15 Where a prior custody order is in effect, the burden of proof is on the custodial parent, but where no prior custody order exists, each party initially stands "on equal ground." *Hurley v. Hurley*, 754 A.2d 1283, 1287 (Pa.Super.2000). Indeed, our Court has consistently held that "prior to the formation of a custodial order, the parents stand on equal footing and the only burden carried by either of them is to establish what is in the best interest of the

child." *Id.* at 1286 (citations omitted). The trial court, in citing to our holding in *McAlister v. McAlister,* 747 A.2d 390, 392 (Pa.Super.2000), properly proceeded to analyze the application of the *Gruber* factors to the instant case in the context of two competing custodial environments.

¶ 16 Before we address Father's contentions that the trial court improperly applied the *Gruber* factors, we first examine his other assertions of trial court error and Wife's responses thereto. Father alleges that the trial court erred in superceding its order of October 12, 1999 directing Mother to return the children to Pennsylvania forthwith by its subsequent order of November 3, 2000 after Mother obtained a Florida restraining order. We disagree.

¶ 17 Father originally filed a petition for custody and special relief requesting that the trial court direct Mother to return the children to Pennsylvania immediately. Mother responded by filing a petition for conciliation hearing and special relief pursuant to Rule 1915.13 of the Pennsylvania Rules of Civil Procedure in which she acknowledged that the Monroe County Court of Common Pleas had jurisdiction over the parties' custody issues and that she was required to return there to litigate those outstanding issues. In the Petition, she averred that she had grave concern about Father having primary physical custody of the children in light of his failure to complete anger management counseling during their marriage and constant physical abuse and threats toward her, both before her departure from the marital residence and via telephone at her home in Florida. She further attached a copy of the Restraining Order she had been forced to obtain from the Florida Court as a result of Father's continued telephone harassment and threats. The special relief she requested, in light of these concerns, was that she be permitted to retain primary physical custody of the children pending custody conciliation, which she also requested.

¶ 18 Upon further review, with this additional information brought to its attention, the trial court thought better of its previous order of October 12, 1999, and granted the special relief requested by Mother. *See* 42 Pa.C.S.A. § 5505 (providing that a trial court may modify or rescind any order within 30 days after its entry if no appeal from such order has been taken or allowed). We, therefore, find no abuse of discretion in the trial court's superceding order of November 3, 1999.

¶ 19 Father next claims that the trial court erred in allowing the children to remain with Mother in Florida for 14 months before conducting a relocation hearing. Mother correctly argues, however, that Father waived his challenge to the December 14, 1999 Order granting Mother temporary physical custody of the children entered following the custody conciliation by failing to file exceptions to that order of court. Pursuant to Rule 1915.4–2(g) of the Pennsylvania Rules of Civil Procedure, in order to avoid waiver, Father had ten days from the date of the December 14, 1999 Order to file exceptions. At no time did Father file exceptions to the order of December 14, 1999, nor did Father request a further custody hearing until May 9, 2000. An additional custody conciliation was conducted in June of 2000, during which the parties were again unable to resolve their differences. Accordingly, on July 14, 2000, Judge Worthington entered an order adopting the recommendation of the custody conciliator granting Father a period of physical custody with the children until August 4, 2000, at which time the children were to be returned to Mother pending the full evidentiary hearing on relocation scheduled for November 22, 2000. Not until August 24, 2000, did Father petition

the court to schedule a full evidentiary hearing regarding Mother's relocation with the children. In the petition, Father acknowledged that both the home study and psychological evaluation were complete and "the matter is ripe for a full evidentiary hearing...." (Motion for Evidentiary Hearing, 8/24/00, at 2.) The trial court, therefore, acted properly and caused no delay by scheduling the full evidentiary hearing when requested and permitting the children to reside with Mother in the interim.

¶ 20 Father also alleges that the trial court erred in not considering the circumstances of the parties at the time of the requested relocation rather than a period of time 14 months later in granting Mother's relocation request and denying Father's custody petition. He claims that Mother now has benefited at trial from the 14-month delay because the children similarly could have benefited in Pennsylvania during that time period had they been required to stay. (Appellant's Brief, at 21.) He asserts that Mother should not now be rewarded for suddenly having left the jurisdiction with the children without his or the court's approval. (*Id.*)

¶ 21 Mother argues in response that Father has waived the opportunity to object to the trial court's consideration of the parties' current situation at the time of the full evidentiary hearing because he failed to file exceptions to the interim order of December 14, 1999, adopting the conciliator's Recommendation that the children remain with Mother pending a full evidentiary hearing. She further asserts that Father bears the responsibility of having failed to petition for a full evidentiary hearing until August of 2000, and the trial court's consideration of Mother and the

children's status at the time of the hearing, not 14 months earlier, was reasonable. (Appellee's Brief, at 10.)

¶ 22 Although we do not condone Mother's actions in leaving the jurisdiction with the children without Father's consent or court approval, we nonetheless find that Father contributed to the 14-month delay in scheduling a full evidentiary hearing by failing to file exceptions to the December 14, 1999 interim order granting Mother temporary physical custody of the children and not petitioning the court for a full evidentiary hearing much sooner. Additionally, we question the advisability of requiring a trial court to disregard the time period 14 months prior to the evidentiary hearing, thereby ignoring relevant considerations in conducting a legitimate analysis of the best interests of the children. Further, although Father argues that the trial court abused its discretion by considering the children's status during the 14 months that they lived in Florida in making the custody/relocation determination, we note that he has offered no specific legal authority in support of the proposition that this time period should not be considered.[2] Accordingly, we deem these arguments to have been waived. *See* Pa. R.A.P. 2119; *Collins v. Cooper*, 746 A.2d 615, 619 (Pa.Super.2000) (holding claim of error waived when "appellant has failed to cite any authority in support of a contention"); *Juniata Valley Bank v. Martin Oil Co.*, 736 A.2d 650, 661–62 n. 8 (Pa.Super.1999) (same). Accordingly, Father's assertions of trial court error on this issue must fail.

¶ 23 In Father's remaining contentions, he essentially argues that the trial court erred in determining that the first

---

**2.** We note, however, that Father does argue this time period should not be considered because Mother's motives in removing the children from the jurisdiction were disingenuous and, therefore, contrary to the second *Gruber* factor, which will be discussed *infra*.

two factors enunciated in *Gruber* had been satisfied. Specifically, he claims the trial court erred in finding that the quality of the children's lives had been improved significantly by the move to Florida with Mother in that, when they first relocated, Mother was unemployed and their financial condition was not improved. He further asserts that the children did not need to be relocated to Florida in order to be well-adjusted, happy and free from his alleged abusive behavior. Additionally, he argues that testimony at the hearing revealed that Mother had placed the children in a dangerous environment by initially staying with her step-grandfather, an alleged sex offender.

¶ 24 In evaluating whether the first prong under *Gruber* has been met, we specifically have held that the trial court must consider more than just the economic advantages accruing to the relocating party and is "not free to ignore or discount non-economic factors which are likely to contribute to the well-being and general happiness of the custodial parent and the children." *Gruber*, 400 Pa.Super. at 185, 583 A.2d at 439; *see also Kaneski v. Kaneski*, 413 Pa.Super. 173, 180, 604 A.2d 1075, 1078–79 (Pa.Super.1992).

¶ 25 The trial judge, after hearing all the testimony and reviewing the evidence, made credibility determinations that we, as an appellate court, must not disturb. She determined, and we agree, that the record supports a finding that Mother's move to Florida was not just a momentary whim and has resulted in substantial improvement in the quality of her life and the lives of the children. Indeed, while Father may have a greater net annual income, Mother offered uncontroverted testimony that he did not permit her to work while they lived together in Pennsylvania. Accordingly, the trial court found that Mother's personal income situation has im-

proved as she now owns her own business. Further, the trial court credited the testimony of Randy Getz, Mother's son, that she is much happier, as well as the testimony of numerous others that the children are thriving, happy and surrounded by extended family. Additionally, the trial court credited Mother's testimony that she had attempted to resolve her problems with Father for a significant period of time before the move, but was unable to do so because of his abusive and controlling temperament.

¶ 26 It is well-settled that the well-being and best interests of the children are inextricably joined to the custodial parent's happiness and improved quality of life, whether economic or otherwise. *See Ferdinand v. Ferdinand*, 763 A.2d 820, 825 (Pa.Super.2000) (reversing trial court order denying mother's petition to relocate where non-economic improvements in mother's quality of life and happiness would inure to the benefit of her children). Given the record before us, we find no abuse of discretion in the trial court's determination that the first factor of *Gruber* was satisfied.

¶ 27 Finally, Father challenges the trial court's determination that the second *Gruber* factor was satisfied. He argues that Mother's actions in moving the children to Florida lacked integrity and were intended to prevent him from maintaining a strong relationship with the children. He further maintains that Mother has demonstrated by her actions that she will not facilitate contact between Father and the children. Mother argues in response that Father made no attempts to see his children in Florida during the 14 months leading up to the hearing. She further testified that she had made significant effort to attempt to resolve various problems with Father, to no avail, before relocating

to find a better environment near loved ones and family in Florida.

¶ 28 The trial court, in evaluating Mother's motives in moving the children to Florida, made valid credibility determinations based on the extensive evidence before her. There is ample evidence on the record demonstrating that Mother's motive in relocating was for the sole purpose of improving the quality of her life and that of the parties' children. Accordingly, the second prong of *Gruber* has been met.

¶ 29 For all of the foregoing reasons, we hereby affirm the order of the trial court denying Father's petition for special relief and for custody and granting Mother's petition for relocation.

¶ 30 Order affirmed.