## Bacon v. Morrison

C.P. of Lawrence County, no. 10797 of 2005

*Michael A. Frisk Jr.,* for plaintiff.
*Ryan C. Long,* for defendant.
*Lori Roebuck,* pro se.

PICCIONE, *J.,* June 26, 2006—

## OPINION

Before the court for disposition is Marlana Morrison's (Mother) petition to relocate. This issue is again before this court based upon Marlana Morrison's petition to supplement record for purpose of relocation. The Mother is requesting permission to relocate with the Minor Child, [   ], born February 24, 2000, to Goose Creek, South Carolina. The court will not be utilizing any notes of testimony from the hearings to supplement the record, as the court wishes to implement this custody order in an expedited manner in order to best facilitate any transitions for the Minor Child and the parties.

The existing custody order dated August 17, 2005 awards primary physical custody of the Minor Child to the Mother, subject to the partial custody rights of Mark Bacon (Father) and Lori Roebuck (Grandmother). The Father currently enjoys partial custody of the Minor Child on each Monday and Wednesday from 5 o'clock p.m. to 8 o'clock p.m. and on alternating Sundays from 1 o'clock p.m. to 6 o'clock p.m. The Mother and Father share legal custody of the Minor Child. The court was also informed at the most recent hearing (June 7, 2006) that the Father has begun to exercise overnight custody with the Minor Child. The court was further informed at said hearing, by testimony, that the Mother and Grandmother have greatly improved their personal relationship and that the Grandmother sees the child on a regular basis, but does not necessarily utilize any type of custody arrangement with the Mother.

The Mother and Father, parties to the instant action, conceived a child, [    ], out of wedlock. The Mother and Father finally separated in August 2004 after a history of separations and reunions. Throughout the Minor Child's life the Grandmother, also a party to this action, has been instrumental in raising her.

The Mother and Father are and continue to be Lawrence County residents. Additionally, both the Mother and Father have many family members that reside in the Lawrence County area including the Minor Child's Maternal and Paternal Grandparents. The Mother filed a petition to relocate on July 27, 2005 upon her engagement to Benjamin Nye. The Mother's fiance, Benjamin Nye, is a former Lawrence County resident who has ob-

tained employment in the Goose Creek, South Carolina area. (N.T. 09/14/05 p. 152.) Mr. Nye has relatives and friends in the Goose Creek area. (N.T. 09/14/05 p. 40.) At the time of the initial hearing, Mother was approximately three months pregnant with their child. (N.T. 09/14/05 p. 63.) Mother and Mr. Nye were married on or about March 8, 2006 and Mr. Nye has moved from Goose Creek, South Carolina to Lawrence County and obtained temporary employment. Additionally, Mother and Mr. Nye recently had a daughter, who was born on or about March 26, 2006.

The testimony of the parties revealed that Mr. Nye was addicted to Oxycodone and sought treatment for that addiction. (N.T. 09/14/05 p. 83.) The Mother provided copies of Mr. Nye's certificates of completion from the Residential Addiction Treatment Program at the Ellen O'Brien Gaiser Addiction Center on May 28, 2004 and from the Moffet House on August 30, 2004.

Mr. Nye presented himself to the court as recovered and capable of meeting the demands of beginning a new family.

The Mother currently has a high school degree and, prior to giving birth to her new daughter, worked approximately twenty hours per week as a server, earning $5.85 per hour plus tips. (N.T. 09/14/05 p. 8.) Mother is currently remaining home with the newborn baby and the Minor Child. The Mother has testified that she has obtained near full-time employment in Goose Creek at the rate of $15 per hour. (N.T. 09/14/05 p. 60.) Mother testified that this employment opportunity is still available if she were permitted to relocate. This employ-

ment includes benefits, which would be available to the Minor Child who currently has medical insurance under the Pennsylvania Department of Public Assistance. Furthermore, Mr. Nye continues to have an employment opportunity with One-Stop Construction in Goose Creek, South Carolina, at the approximate rate of $2,500 per month. The position remains open because he is on leave of absence and he will have to relocate to Goose Creek to retain this employment sometime in June of 2006.

Mr. Nye and the Mother had signed the lease for a townhouse at 30 Crystal Springs Dr., Goose Creek, South Carolina. (N.T. 09/14/05 p. 48.) Although relocation was previously denied, Mother testified that the same townhouse is once again available. They have also chosen a pediatrician for the Minor Child and located St. James Park as a nearby location for the Minor Child to play. (N.T. 09/14/05 pp. 53-54.) If the Mother were permitted to relocate, the Minor Child would attend school at Goose Creek Primary. (N.T. 09/14/05 p. 55.) Additionally, the Mother and Mr. Nye have provided photographs depicting these locations to the court.

The Father is currently on disability due to a back injury and unable to work. Although the Father admitted to his previous shortcomings as a parent, he is improving his relationship with the Minor Child and appears to be improving his life as a whole. Mother testified that Father has exercised his periods of custody approximately 36 of 56 opportunities since January of 2006. Both Mother and Grandmother testified that Father has greatly matured as a parent over the past six months. Father tes-

tified that his driver's license is under suspension for an undetermined period and that he would like more cooperation from Mother in transporting the Minor Child.

The Mother and Grandmother have attended a series of court-ordered counseling sessions at Kids in Common under the supervision of Counselor Brian Dick. Both Mother and Grandmother testify that their relationship has been repaired; specifically, Grandmother testified that their relationship was better than prior to the breakdown because she is able to act as the Minor Child's "grandmother" as Mother has been able to assume full parenting responsibilities for the Minor Child. The Grandmother further testified that she had observed a significant change in the Mother, in that the Mother had matured as a parent and a person. The Grandmother also testified that she has observed Mother, Mr. Nye, the Minor Child, and the new infant interacting as a close family unit and that Mr. Nye has been dependable and supportive of Mother throughout their relationship.

The court finds the standards enumerated in *Gruber v. Gruber,* 400 Pa. Super. 174, 583 A.2d 434 (1990), apply to this case in disposing of the relocation issue presented by the Mother. The *Gruber* court set forth three factors a trial court must consider in determining whether a custodial parent may relocate a distance from the non-custodial parent.

(1) The potential advantages of the proposed move, economic and otherwise, and the likelihood the move would improve substantially the quality of life for the custodial parent and the child and is not the result of a momentary whim on the part of the custodial parent;

(2) The integrity of the motive of both the custodial and non-custodial parent in either seeking the move or seeking to prevent it;

(3) The availability of a realistic substitute visitation arrangement, which will foster adequately an ongoing relationship between the child and the non-custodial parent. *Gruber,* 400 Pa. Super. at 186, 583 A.2d at 440; *Burkholder v. Burkholder,* 790 A.2d 1053 (Pa. Super. 2002).

These three factors must be included in the ultimate consideration of the court, which is the child's best interest. *Thomas v. Thomas,* 739 A.2d 206 (Pa. Super. 1999). Due to the fact that a custody order currently exists, the burden of proof is on the custodial parent requesting relocation. *Dranko v. Dranko,* 824 A.2d 1215 (Pa. Super. 2003); *Tripathi v. Tripathi,* 787 A.2d 436 (Pa. Super. 2001).

A determination of a child's best interest must be premised upon all factors that legitimately affect the child's physical, intellectual, moral and spiritual well-being. *McAlister v. McAlister,* 747 A.2d 390 (Pa. Super. 2000).

The court finds that the Mother will improve her quality of life by moving to Goose Creek, South Carolina. She is currently married to Benjamin Nye and they have a child together. Mr. Nye has stated that he has secured good employment in Goose Creek, South Carolina and that said employment is still available. They have obtained a home to rent and the Mother has stated that she has found near full-time employment for around $15 per hour, which also remains available. Mother's employment includes benefits, which would be available to the Minor Child.

The Mother has researched the school system, the recreational facilities available to the Minor Child and has chosen a pediatrician in Goose Creek, South Carolina. The Mother will also be able to provide the Minor Child with a stable immediate family unit. Most of Mr. Nye's family is located near Goose Creek, South Carolina and Mr. Nye's mother is purported to be moving to Goose Creek as well. (N.T. 09/14/05 p. 61.) The court also finds that, because Mr. Nye and the Mother are married, Mr. Nye has a legal economic obligation towards Mother and that his employment in Goose Creek, earning approximately $2,500 per month, will significantly contribute to the increase in quality of life for the Minor Child.

Therefore, this court finds that the first prong of the *Gruber* analysis has been satisfied. Mother has begun a new life with Mr. Nye and, given their employment opportunities, Goose Creek, South Carolina certainly appears to be the best location for them. The proposed relocation could also benefit the Minor Child in that it could serve to provide a stable family unit for the Minor Child.

The next *Gruber* factor calls for the court to inquire into the integrity of the parties' motives. *Gruber,* 400 Pa. Super. at 186, 583 A.2d at 440. The Mother's motive in initially requesting the move was to be with her fiance, Benjamin Nye, who is now her husband.

Both Mother and Mr. Nye have substantial employment opportunities in Goose Creek, South Carolina that they have been unable to obtain in Lawrence County, Pennsylvania. The Father's motive in seeking to prevent

the move appears to reflect his desire to continue his improving relationship with the Minor Child. Accordingly, the court finds that the motives of the parties are pure, which satisfies the second *Gruber* prong.

The final prong of the *Gruber* analysis examines the availability of a realistic substitute visitation arrangement, which will foster adequately an ongoing relationship between the child and the non-custodial parent. *Id.* Currently, the Minor Child spends time with her Father and Grandmother pursuant to the order of court dated August 17, 2005. The Father admitted that he leaves much to be desired as a parent; however, he has stated that he is striving to become a better parent. The testimony of Mother and Grandmother support Father's testimony that Father is improving as a parent.

The Mother has repeatedly stated her willingness to cooperate in fostering a suitable alternative custody arrangement with Father and Grandmother. At present, Mother and Grandmother have testified that their relationship has become that of a mother and daughter and that Grandmother's relationship with the Minor Child has been occurring without the utilization of Grandmother's custody rights. Therefore, this court finds that a suitable alternative custody arrangement currently exists between Mother and Grandmother. However, Grandmother is still entitled to a modification of her adjudicated custody rights should she feel said modification was necessary. The court heard moving and credible testimony from Father stating that his relationship with the Minor Child has grown and the proposed relocation would hinder future growth. The court accepts that relo-

cation would make it harder for Father to foster his relationship with the Minor Child; however, the relocation would also put Father into the position of spending much greater amounts of extended periods of custody with the Minor Child. Additionally, said relocation will put the Father into a position of assuming the role of parent in the sense that he will have sole responsibility of the Minor Child during his extended periods of custody. Therefore, while the relocation will certainly require Father to work harder to foster his relationship with the Minor Child through his periods of custody and telephonic or written communication, the relocation should not impair Father's relationship with the Minor Child. Accordingly, the court finds that the third prong of the *Gruber* analysis is satisfied.

Considering all relevant factors, and the Minor Child's best interest, the court concludes the Mother has now satisfied the standard set forth in *Gruber*; specifically, the court finds that the Minor Child will benefit from the proposed relocation, in that she will be in a stable family unit that is able to provide for her social, physical and economic needs. The court further finds that the repaired relationship between the Mother and Grandmother is the exception rather than the rule in situations of court-ordered counseling. Their ability to re-establish a relationship has surely improved the life of the Minor Child as well as their own lives and further seems to have enabled the Mother and Father to begin to establish the necessary communication to allow the Minor Child to grow up under the love and care of two parents. For these reasons, the Mother's petition to relocate is granted.

## ORDER

And now, June 26, 2006, this court having held a hearing on June 7, 2006 in order to supplement the record on Marlana Nye's (f/k/a Morrison) petition to relocate, with Ryan C. Long, Esquire, representing Marlana Morrison, the Mother, and Michael A. Frisk, Jr., Esquire, representing Mark Bacon, the Father, and Lori Roebuck, the Grandmother, proceeding pro se, the court finds and it is hereby ordered, adjudged and decreed as follows:

(1) The court finds that the Mother has satisfied the three-prong test, analyzing the advantages of the relocation, the motives of the parties and the availability of realistic substitute custody arrangement, set forth in *Gruber v. Gruber* and its progeny. See *Gruber v. Gruber,* 400 Pa. Super. 174, 186, 583 A.2d 434, 440 (1990). Therefore, Mother's petition to relocate Minor Child is hereby granted as set forth in the accompanying opinion.

(2) Based on the above findings, the court enters the following order:

(a) Primary physical custody of the Minor Child, [ ], born February 24, 2000, is awarded to the Mother; subject to the rights of partial physical custody of the Father and Grandmother as hereinafter set forth.

(b) The Father and Grandmother shall enjoy partial custody, holiday custody, and summer custody of the Minor Child as the parties from time to time shall mutually agree.

(c) In the absence of such mutual agreement, the Father and Grandmother shall enjoy custody of the Minor Child as follows:

(i) During the school year, the Father shall be entitled to custody of the Minor Child during those periods of time the child shall have a period of at least five consecutive days when she is not required to be in school.

(ii) The Minor Child's Christmas holiday from school shall be divided into two time periods, one commencing after the last day of school at the beginning of the Christmas holiday until 5 o'clock p.m. December 26, which shall be the first time period, and another from 5 o'clock p.m. December 26th to the following January 3rd or commencement of school, whichever first occurs, which shall be the second time period. Such custody with the Minor Child shall be alternated annually between the parties with the Mother being entitled to custody during the first time period and the Father the second time period during even-numbered years, and the Father being entitled to the first time period and Mother the second time period during odd-numbered years.

(iii) The parties shall alternate custody of the Minor Child on Thanksgiving and, if any, "spring break" or similar time off from school. Such custody with the Minor Child shall be alternated annually between the parties with the Father being entitled to custody during the first time period and the Mother the second time period during even-numbered years, and the Mother being entitled to the first time period and Father the second time period during odd-numbered years.

(iv) During the summer months of June, July and August while the Minor Child is not in school, the Mother and Father shall be entitled to three weeks of physical custody with the Minor Child and with each giving at

least 30 days prior notice of such selection of custody to the other party. During the even-numbered years, the Mother's choice shall take precedent and during odd-numbered years, the Father's choice shall take precedent. Such vacation period shall occur during the time period commencing one week after the ending of school to one week prior to the commencement of school for the Minor Child.

(v) The Grandmother shall be entitled to a one-week period of physical custody prior to or subsequent to Father's summer custody, as the parties shall from time to time mutually agree.

(vi) Each of the parties shall enjoy reasonable telephonic visitation, including computer-aided video technology, with the Minor Child when the Minor Child is not in his or her custody at such reasonable times and hours as the parties may arrange. Neither party shall abuse the privilege by an unreasonably excessive number of contacts or length of contacts and shall not utilize the contact for any other purpose than visitation with the Minor Child. The then custodial parent and grandparent shall not intentionally withhold the availability of the Minor Child to prevent the then non-custodial parent from enjoying such visitation contact and shall make every effort to make the Minor Child available from time to time for such reasonable visitation contact.

(d) The Mother and Father shall have shared legal custody of the Minor Child and shall execute any and all documents or releases necessary to effectuate legal custody, including but not restricted to, authorizations and/ or releases for school reports, medical reports, insurance

documents and documents required by state, local or federal authorities. Except in the case of medical emergencies, the custodial parent will consult with the non-custodial parent with regard to the medical, dental and psychiatric care and treatment of the Minor Child. The Mother and Father shall have the right to review medical, dental and psychiatric records of the Minor Child. Also, the custodial parent is responsible for the academic performance of the Minor Child and the Minor Child's participation in normal extracurricular activities.

(e) In any transporting of the Minor Child, all parties and anyone involved with such transportation shall comply with the laws and regulations of the Commonwealth of Pennsylvania including those regarding child safety restraint apparatus in any vehicle used to transport the child.

(f) The transportation of the Minor Child for the purposes of the aforestated periods of custody shall be as the parties mutually agree. In the event that the parties fail to agree, such transportation shall be as follows:

(i) The Father shall initiate all requests and arrangements for such transportation.

(ii) The Mother and Father shall equally share the cost and responsibility of transporting the Minor Child to and from the aforestated periods of custody. The Mother and Father shall arrange a mutually agreeable meeting destination to exchange custody of the Minor Child. In the absence of such agreement, the Mother and Father shall select a destination that is approximately equal distance in time between the residence of the Mother and Father where the exchange of custody shall occur. It shall be

the responsibility of the Mother and Father to arrive at the custody exchange destination not later than 30 minutes after the agreed-upon time of exchange.

(g) The parties shall read and fully comply with the provisions of the appendix to custody order, which is attached hereto and filed with this order.

(h) The parties are directed to cooperate with each other in fulfilling the requirements of this order and all other orders in connection with this matter. Failure to do so may result in sanctions being imposed by the court upon the offending party, including suspension of custody and payment of attorney's fees.

(i) The provisions of all existing orders of court not in conflict with or modified by the provisions of this order shall remain and continue in full force and effect.

(3) The prothonotary shall serve notice of this order of court and opinion upon counsel of record for the parties, and if a party has no counsel, then upon said party at their last known address as contained in the court's file.