J-A03002-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| A.P.T. | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| J.L.T. | |
| Appellant | No. 1154 MDA 2016 |

Appeal from the Order Entered June 15, 2016
In the Court of Common Pleas of Cumberland County
Civil Division at No(s): 2011-07420

BEFORE:  LAZARUS, J., STABILE, J., and DUBOW, J.

MEMORANDUM BY LAZARUS, J.:                    **FILED MARCH 21, 2017**

J.L.T. (Mother) appeals from the trial court's order denying Mother's request to reinstate a June 2012 parenting plan, putting a new parenting plan into place, and granting A.P.T. (Father) primary physical custody and Mother and Father shared legal custody of the parties' minor daughter, D.K.T. (born 5/2003).[1]  After careful review, we affirm.[2]

The parties were married; they separated in January 2011.  In July 2011, Father filed a custody complaint against Mother seeking shared legal custody and partial physical custody of D.K.T. and her siblings.  On

---

[1] Parents have three children D.K.T., A.M. (born 1/2011), and L.P. (born 9/2006).  Mother has primary physical custody of L.P. and A.M.  The instant appeal involves only D.K.T.

[2] Father has not filed a brief on appeal.

December 13, 2011, Father was awarded partial physical custody and a visitation schedule was arranged. Father filed a contempt petition against Mother for failing to abide by the custody order. The court found Mother in contempt and sanctions were imposed against her. On June 8, 2012, the court entered a new custody granting Mother primary physical custody and Father partial custody; the parties retained shared legal custody.

In July 2015, Mother filed a petition for special relief, requesting that Father's visits with D.K.T. be supervised, claiming that D.K.T. has suffered sexual, mental and verbal abuse while in Father's custody. Mother specifically averred that Father's Stepfather (paternal Step-Grandfather) had sexually abused D.K.T. The petition was denied without a hearing and the court ordered conciliation for the parties. On August 6, 2015, the court appointed Grace D'Alo, Esquire, as Guardian Ad Litem (GAL) for D.K.T.

On October 7, 2015, the Cumberland County Children and Youth Services (Agency) received a referral alleging that Mother had emotionally abused D.K.T. The court held a dependency hearing and a safety plan was developed which placed D.K.T. with her maternal grandparents. On October 21, 2015, the court continued the safety plan, but permitted Father to have periods of partial physical custody.

On October 29, 2015, the GAL filed a report and proposed order recommending that primary physical custody be transferred to Father. On October 30, 2015, the court terminated dependency, granted Father primary

physical custody, and ordered that Mother continue to have no contact with D.K.T. unless agreed to by all parties. Father was also ordered to provide counseling or other therapy for D.K.T. Mother filed a motion for reconsideration, which was denied. On February 17, 2016, the court appointed a second GAL, Robert Hawn, Esquire, for D.K.T. when GAL D'Alo had to travel out of the country.

The court held a two-day custody hearing in March 2016. At the hearing, Doctor Ashley Milspaw, an expert in clinical psychology, testified that she conducted a psychological evaluation of Mother and concluded that she "seems to be an adequate parent and [knows how to] appropriate[ly] parent[]." N.T. Custody Hearing, 3/2/16, at 11. Doctor Milspaw recommended that Mother engage in some outpatient psychotherapy to assist her with stress and anxiety she experienced associated with the current custody battle and to help her with her health issues. *Id.* Child's maternal grandmother testified that while she was Child's custodian, D.K.T. seemed withdrawn and anxious at times and would try to seclude herself from the rest of the family. *Id.* at 40. Grandmother also testified that she never saw Mother do anything that would have caused concern with regard to how she cared for her children. *Id.* at 43. Prior to living with Father, maternal grandmother testified that Child was actively involved in basketball and softball leagues, *id.* at 53, but since then had chosen not to play those sports and has taken up babysitting after school. *Id.* at 53-52.

On April 7, 2016, the court held an evidentiary hearing where Father's fiancée testified regarding her relationship with D.K.T., Father's involvement with and parenting of D.K.T., and any interactions she had had with Mother. Fiancée is the parent to two girls, six years old and eighteen years old, whom she claimed have a sibling-like relationship with D.K.T.

Father testified that he is concerned that a lot of negative talk about him occurs when D.K.T. is at Mother's home, coming from both Mother and Mother's father (maternal grandfather). N.T. Custody Trial, 3/3/16, at 45, 48. On June 1, 2016, Hawn issued a report recommending that Mother be awarded primary physical custody of D.K.T, with the following suggestions:

(1) D.K.T. promptly resume counseling sessions;

(2) D.K.T. actively reestablish herself in the community by engaging in sports, recreation, and social activities, as well as renewing friendships; and

(3) Mother undergo counseling to help her reconcile the failure of her marriage, resolve the issues with father, and move on with her life.

*Guardian ad Litem* Report, 6/1/16, at 18.[3] In response to GAL Hawn's report, GAL D'Alo issued an unsolicited report contradicting GAL Hawn's recommendation that Mother be granted primary physical custody of D.K.T. Specifically, GAL D'Alo made the following observations:

- Mother does not understand D.K.T.'s need for Father;

_____

[3] On July 23, 2016, GAL Hawn informed the court that he no longer represented any party in interest in the matter after the court entered its final custody order on June 15, 2016.

- Mother will denigrate Father if D.K.T. is returned to her care;

- Mother will continue to limit D.K.T.'s contact with Father; and

- Mother's reactions are not in the best interest of D.K.T.

GAL D'Alo's Response to Report by GAL Hawn, 6/8/16, at 2.

On June 15, 2016, the court entered the current custody order awarding Mother and Father shared legal custody, awarding Father primary physical custody and setting forth, in part, the following schedule:

- Mother has overnight physical custody of D.K.T. on the first and third weekends of even months; Father has overnight physical custody on the second weekend of even months;

- Father has overnight physical custody of D.K.T. on the first and third weekends of odd months; Mother has overnight physical custody on the second weekend of odd months;

- The parties shall attend co-parenting counseling at the request of either party;

- "Good night" phone calls shall be placed nightly to the non-custodial parent;

- Parents are encouraged to establish a mutually agreeable holiday custody schedule[.]

Trial Court Order, 6/15/16. After conducting its analysis of the sixteen section 5328(a) factors, the trial court set forth its reasons for fashioning the instant custody award as follows:

> This Parenting Plan is strongly focused on [D.K.T.], her needs and best interest. This action was required by the ongoing drama at Mother's house that culminated in this court reporting the neglect of this child to Cumberland County Children and Youth Services Agency. Mother is found to be duplicitous and insincere. She often over[-]corrects for problems she creates.

Mother is narcissistic, in that she seeks favorable treatment for herself, and automatic compliance[,] or else she will become exploitative. There are those who would describe Mother as a helicopter parent; however, truth be told there are times that she allows the children to be unsupervised as was demonstrated in the making and posting of the YouTube video. The fact that [D.K.T.] is thriving in her current household, in spite of all the tumult and uproar she has experienced this school year, is indicative that the prior court ruling was exactly what she needed and there is no reason to endanger her education any further. It is noted that the *Guardian Ad Litem* Hawn report believes a return to the June 2012 Parenting Plan would be in order and this report was duly considered. Indeed, the report makes several future recommendations about the best interest of [D.K.T.] including ongoing counseling which . . . per the last testimony is continuing; having Mother undergo counseling to help her reconcile the failed marriage, resolve her own father issues, and move on with her life; cut the **every** weekend travel for the chi[ld]ren; and also require Father to repay his student loans to assure children's eligibility in the future. The circumstances that led the [c]ourt to this drastic midyear school change still exist[] and without the ability of each parent to develop the respective co-parenting skills necessary, a strict structure is all the court can provide. The flexibility that co-parenting would provide to allow children to participate in extracurricular activities that occur on weekends when hey may be in [the] custodial time of another parent cannot be magically resolved by the [c]ourt. Only the parents have this ability, if they choose to use it, which heretofore they have not. Thus, in the best interest of D.K.T. . . . the above Parenting Plan has been established.

Trial Court Opinion, 6/15/16, at 13-14. Mother filed a timely notice of appeal and Pa.R.A.P. 1925(b) concise statement of matters complained of on appeal. The trial court filed a Rule 1925(a) opinion where it incorporated, by reference, the section 5328(a) custody factors set forth in its June 2016 Parenting Plan/Custody Order.

On appeal, Mother raises the following issues for our review:

> (1) Did the trial court abuse its discretion in its analysis of the factors under 23 Pa.C.S. § 5328(a) by reaching unreasonable conclusions not supported by the evidence presented during the custody hearings?
>
> (2) Did the trial court abuse its discretion in its analysis of the factors under 23 Pa.C.S. § 5328(a) by failing to address the subject matter of multiple factors?
>
> (3) Did the trial court abuse its discretion in its Reasons for Award by making inferences and deductions not supported by the evidence of record?

Appellant' Brief, at 4.

> The scope of review of an appellate court reviewing a child custody order is of the broadest type; the appellate court is not bound by the deductions or inferences made by the trial court from its findings of fact, nor must the reviewing court accept a finding that has no competent evidence to support it. . . . However, this broad scope of review does not vest in the reviewing court the duty or the privilege of making its own independent determination. . . . Thus, an appellate court is empowered to determine whether the trial court's incontrovertible factual findings support its factual conclusions, but it may not interfere with those conclusions unless they are unreasonable in view of the trial court's factual findings; and thus, represent a gross abuse of discretion.

*Kaneski v. Kaneski*, 604 A.2d 1075 (Pa. Super. 1992) (citing *McMillen v. McMillen*, 602 A.2d 845 (Pa. 1992)). In addition, with regard to issues of credibility and weight of the evidence, we must defer to the presiding judge who viewed and assessed the witnesses first-hand. *C.R.F. v. S.E.F.*, 45 A.3d 441, 443 (Pa. Super. 2012) (citation omitted). Moreover, the primary concern in any custody case is the best interests of the child.

Beginning on January 24, 2011, new legislation prescribed a number of factors that a trial court *must* consider discretely in entering or modifying a custody order. *M.E.V. v. F.P.W.*, 100 A.3d 670, 671 (Pa. Super. 2014).

Those factors are enumerated in 23 Pa.C.S. § 5328(a). "Notably, this Court has held that it is not sufficient that the trial court merely state its reasoning on the record in open court or conclusorily assert that it has considered the enumerated factors in reaching its disposition." *Id.* at 672. Rather,

> [t]he Act requires a court to consider all of the § 5328(a) best interest factors when "ordering any form of custody." 23 Pa.C.S. § 5328(a) . . . [Subs]ections 5323(a) and (d) reinforce this mandate by requiring a court to delineate the reasons for its decision when making an award of custody either on the record or in a written opinion. Mere recitation of the statute and consideration of the § 5328(a) factors en masse is insufficient. *C.B. v. J.B.*, 2013 PA Super 92, 65 A.3d 946, 950 (Pa. Super. 2013). A trial court's failure to place its reasoning regarding the § 5328(a) factors on the record or in a written opinion is an error of law. *J.R.M. v. J.E.A.*, 2011 PA Super 263, 33 A.3d 647, 652 (Pa. Super. 2011). Accordingly, in *C.B.*, when the trial court merely stated that it had considered the § 5328(a) factors, we held that the trial court's on-the-record explanation was insufficient under the statute. 65 A.3d at 950-51. Similarly, in *M.P. v. M.P.*, [2012 PA Super 215, 54 A.3d 950, 955-56 (Pa. Super. 2012),] we found error where the trial court listed the § 5328(a) factors but failed to apply them[.]

*Id.*, citing *S.W.D. v. S.A.R.*, 96 A.3d 396 (Pa. Super. 2014).

On appeal, Mother's claims boil down to one basic contention that the court abused its discretion in coming to its custody determination. Specifically, Mother contends that the court's conclusions were unreasonable and unsupported by the record and that the court failed to consider several statutory factors under section 23 Pa.C.S. § 5328(a). Mother asserts that had the court properly considered the evidence of record, it would have concluded that the best interests of D.K.T. would be served by awarding Mother primary physical custody.

We recognize that the trial court's analysis of subsections 5328(a)(5) (availability of extended family), (7) (preference of children), and (9) (which parent more likely to attend to physical, emotional, developmental, educational and special needs of child) as it applies to D.K.T. is scant or lacking in depth. Specifically, when analyzing section (a)(5) the court does not mention Mother's large extended family, all of whom live close by to her and some of whom acted as D.K.T.'s caregivers when D.K.T. was declared dependent. In addition, we recognize that the trial court fails to mention D.K.T. at all, instead only discussing her brother, in its section 5328 analysis of factor (a)(9), a critical component regarding the well-being of a child. Finally, with regard to factor (a)(7), the court seems to rely upon "non-verbal cues indicat[ing] that [D.K.T.] is thriving within Father's household," to determine D.K.T.'s "well-reasoned" preference. However, not only is this determination not explained or supported by specific evidence in the record, it also fails to acknowledge that GAL Hawn noted in his report, only days before the instant custody order was entered, that "D.K.T. lacked sufficient maturity to express a well-reasoned preference and that D.K.T.'s preference has in fact changed from Father to Mother." GAL Report, 6/1/16, at 11-12, 16.

However, after reviewing the entire record including all GAL reports, pleadings, petitions, orders, custody trial notes and professional opinions regarding the parties' mental and psychological states, we cannot conclude that the trial court's conclusions are unreasonable. *Cf. M.E.V. v. F.P.W*.,

100 A.3d at 681 (trial court may not merely rely upon conclusory assertions regarding consideration of section 5328(a) factors in entering an custody order); **C.A.J. v. D.S.M.**, 136 A.3d 504 (Pa. Super. 2016) (where trial court only considered half of statutorily mandated custody factors in fashioning its order, order vacated and case remanded for preparation of opinion and order specifically addressing all section 5328(a) factors). As an appellate court we are mindful that our role does not include making independent factual determinations. **In re C.R.F.**, 45 A.3d 441, 443 (Pa. Super. 2012). We are also cognizant of the fact that while the result of custody proceedings no doubt has a "lasting impact on the lives of the parties concerned," **Ketterer v. Seifert**, 902 A.2d 533, 540 (Pa. Super. 2006), upon petition, a trial court can modify a custody order to serve the best interest of the child.

In **C.W. v. K.A.W.**, 774 A.2d 745 (Pa. Super. 2001), our Court recognized the role of a *guardian ad litem* in custody matters, noting

> A *guardian ad litem* is appointed by the court to represent a minor child in particular litigation. The function of the guardian is to represent and protect unrepresented minors and their interests. [citation omitted] A *guardian ad litem* is not a judicial or quasi-judicial officer.

> \* \* \*

> In a non-jury trial such as this, the role of the judge is to interpret the law, determine the facts and apply the facts to the law for an eventual decision of the controversy. The trial court may not delegate its judicial powers [to the *guardian ad litem*].

*Id.* at 748-49. Here, we are confident that although the two GALs provided opposing recommendations with regard to the award of primary physical custody, the court made an independent determination regarding what was in D.K.T.'s best interests after observing the proceedings in the matter, assessing the credibility of the many witnesses, and weighing the requisite factors under section 5328. *C.R.F.*, *supra*; 23 Pa.C.S. 5328 ("In ordering any form of custody, the court shall determine the best interest of the child by considering all relevant factors, giving weighted consideration to those factors which affect the safety of the child[.]"); *M.J.M. v. M.L.G.*, 3 A.3d 331, 336 (Pa. Super. 2013 ("there is no required amount of detail for the trial court's explanation; all that is required is that the enumerated factors are considered and that the custody decision is based on those considerations."). Under such circumstances we are obligated to affirm the court as its order is neither manifestly unreasonable nor a gross abuse of discretion.

Order affirmed.

Judge Dubow joins this Memorandum.

Judge Stabile notes his dissent.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/21/2017