J-A16007-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| RAFAELA LAPENTA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JONATHAN FAGAN | : | No. 85 EDA 2025 |

Appeal from the Order Entered December 11, 2024
In the Court of Common Pleas of Delaware County Civil Division at
No(s):  CV-2020-003280

BEFORE:  LAZARUS, P.J., KUNSELMAN, J., and KING, J.

MEMORANDUM BY LAZARUS, P.J.:                    **FILED JULY 15, 2025**

Rafaela LaPenta (Mother) appeals from the order, entered in the Court of Common Pleas of Delaware County, awarding Mother and Appellee Jonathan Fagan (Father) shared legal custody of the parties' children, I.F. (born October 2010) and A.F. (born September 2014) (collectively, Children), shared physical custody of A.R., and awarding Father primary physical custody of I.F.  The court's order also mandates that, within 30 days, Father is to undergo a substance use and mental health evaluation and enroll in an anger management class and Mother is to schedule hair follicle testing and a substance use evaluation and enroll in family counseling with I.F.[1]  After

_____

[1] The court's order also immediately terminates I.F.'s individual counseling.

careful review, we affirm on the well-reasoned final order authored by the Honorable Nusrat J. Rashid.[2]

Mother and Father began a romantic relationship in 2013. Although they never married, Mother and Father lived together for several years until they separated in 2019. For the past five years, the parties have been involved in a protracted and contentious custody battle. On May 21, 2020, Mother filed a complaint for custody against Father seeking legal and physical custody of Children. While Mother and Father are the biological parents of A.F., only Father is the biological parent of I.F. [3] Mother, however, has *in loco parentis* status with regard to I.F. **See C.G. v. J.H.**, 193 A.3d 891, 910 (Pa. 2018) ("[T]he rights and liabilities arising out of *in loco parentis* are the same as that between child and parent and its status is conferred upon a person who puts him or herself in the situation of a lawful parent.").

_____

[2] On the same day that it entered the instant custody order, the trial court entered three contempt orders—two against Mother and one against Father—for violating various custody orders. Mother has filed an appeal (contempt appeal), at 86 EDA 2025, from the court's order finding Father in contempt and imposing $100.00 in attorneys' fees as a sanction. On January 28, 2025, Mother filed a motion to consolidate the instant appeal and the contempt appeal where "[b]oth [o]rders center around the same child custody matter and are based upon the same record." Motion to Consolidate, 1/28/25, at 2 (unpaginated). Our Court denied Mother's motion to consolidate. **See** Order, 1/28/25 (denying consolidation, but listing appeals consecutively, where only one appeal is designated Children's Fast Track).

[3] Father also has a third child, T.F., who is not involved in this custody matter. **See** Custody Order, 8/22/24 (Mother and Maternal Grandmother voluntarily withdrew petitions to intervene in custody matter, waving standing and all custodial rights, involving Father and biological mother of T.F.).

On the same day that the custody complaint was filed, Mother filed an emergency petition seeking a temporary custody order granting her primary physical custody of Children "pending further [o]rder of [c]ourt." *See* Emergency Petition for Custody Order, 5/21/20, at 6 (unpaginated). In the petition, Mother acknowledged that, since their separation, the parties had a "50/50 custody arrangement" with regard to Children. *See id.* at 2 (unpaginated). However, Mother also averred that Father "is an alcoholic and drinks to excess every day[,] has had serious mental health issues, has attempted suicide[,] and was involuntarily committed at least three (3) times [in] February 2013[,] September 2019[,] and March 2020[.]" *Id.* Father filed an answer to the emergency petition denying the allegations that he is an alcoholic and drinks to excess every day. *See* Answer to Emergency Petition for Custody Order, 6/17/20, at ¶ 9. On July 2, 2020, the court entered a temporary custody order giving the parties shared legal custody of Children, Mother primary physical custody of A.F., Father primary physical custody of I.F., ordered Father to conduct a breath test at every custodial exchange, and required the parties to attend family counseling. *See* Temporary Custody Order, 7/2/20, at 1-4.

In October 2020, in response to a petition for contempt/sanctions/counsel fees filed by Father, the parties entered into a "stipulated custody order" where they agreed to share both legal and physical custody of Children. *See* Stipulated Custody Order, 10/13/20 at 1-2 (unpaginated). The stipulation was made an order of court on October 16,

2020. On November 15, 2021, Mother filed another emergency petition seeking a temporary order granting her primary physical custody of Children and ordering Father to take a hair follicle test due to Mother's concern for Children's safety, alleging Father has been drinking during custodial times. Father filed an answer to Mother's emergency petition stating that, while he admits to drinking alcohol in moderation, his drinking "has never impaired his ability to parent nor has it ever in any way placed the minor child[ren] in harm's way[.]" Answer to Emergency Petition, 11/18/21, at (h).

On March 30, 2022, Mother filed a petition for the appointment of a parental alienation evaluator to conduct an evaluation on Father to determine if he is alienating Children from Mother. On August 10, 2022, the court appointed Stanley Clawar, PhD, CCS, as a parental alienation evaluator for the parties, the cost to be split evenly between them.[4] The parties were ordered to "participate fully with the evaluator on a timely basis," follow any of Dr. Clawar's recommendations, and engage in co-parenting counseling with Dr. Andrea Serber. *See* Order, 8/10/22, at 2. Doctor Clawar's parental alienation evaluation concluded that alienation had taken place "predominantly by the Father's direct and indirect behaviors, attitudes, and judgements" and recommended that he seek help for his problems, that he have more significant time with Children, and that he stop speaking openly of his

---

[4] On August 30, 2022, the court modified the order, now requiring Mother pay the full cost of Dr. Clawar's evaluation.

"disdain" for Mother. *Id.* at 67-68. Doctor Clawar also recommended that Mother receive coaching to "re-bond" with Children. *Id.* at 66.

Following a hearing, on August 24, 2022, the court entered the following agreed-upon terms that resolved Mother's emergency petition: (1) Father's custodial time be supervised; (2) Father immediately participate in a drug and alcohol evaluation; and (3) Father submit to a 17-panel hair follicle test. Order for Relief, 8/24/22, at 1-2 (unpaginated). On August 29, 2022, V. Richard Roeder, PhD, a psychologist specializing in substance abuse, conducted an evaluation that noted while Father considered his level of alcohol consumption "normal"—estimating he consumed 2 to 6 drinks three to four days a week— hair test[5] results indicated Father had consumed 30-60 drinks per week over the past 45-60 days. *See* V. Richard Roeder, PhD, Substance Use Evaluation (Conclusions and Recommendations), 8/29/22, at 3. While Dr. Roeder indicated that Father's overall health and well-being would improve if he were to enter treatment program, the psychologist concluded that "nothing . . . indicated that if [Father] were [not] abstaining from alcohol during parenting and placement time that he would be placing himself or others in danger." *Id.* Doctor Roeder also conducted a psychological evaluation and recommended that Father participate in a psychoeducational anger

---

[5] By way of reference, the test results stated that "excessive alcohol consumption [] is defined as a reading of EtG equal to or greater than 30 pg/mg." Sychemedics Hair Analysis Drug Test Result, 9/3/22. Father's test results showed he registered as having a 67.2 pg/mg, an excessive consumption range reading.

management program and continue to use Soberlink[6] during his custodial time "in order to decrease use of alcohol and eliminate his use of alcohol during parenting." V. Richard Roeder, PhD, Psychological Evaluation 10/25/22, at 4. *See also* V. Richard Roeder, PhD, Parental Alienation Report at 58, 61 (doctor acknowledging Father's "long and significant history of alcohol use and abuse" and concluding Father's [in]ability to maintain sobriety "is problematic").

On October 5, 2022, in response to an amended emergency petition to modify custody filed by Mother,[7] the court entered a temporary order directing Father's visits be supervised by an adult, that Father "not drink alcohol during his periods of physical custody, and that Father "shall immediately register and install Sober[l]ink . . . and use the [device] daily during his custodial period[s]." Temporary Order, 10/5/22, at 1-2. Following a hearing, on October 21, 2022, the court suspended Father's periods of physical custody pending a psychological evaluation after finding "credible evidence [that Father posed] imminent physical danger to [C]hildren." *See* Temporary Order, 10/21/22, at 1 (unpaginated). In the order, the court permitted Father

_____

[6] Soberlink is a comprehensive system that "remotely measures alcohol in human breath to aid in the detection and monitoring of alcohol consumption." *See* https://www.soberlink.com/alcohol-monitoring-technology (last visited 7/1/25). The system includes adaptive facial recognition and tamper detection technologies, professional-grade fuel cell sensors to issue reliable and consistent BAC readings, and advanced reporting technology. *See id.*

[7] Mother emergency petition alleged that she has "grave concerns for [Father's] mental health" and that Father "continued to drink alcohol in excess during his periods of custody" despite the fact that his visits are supervised by paternal grandfather. Emergency Petition to Modify Custody, 10/4/22, at ¶¶ 12, 16.

to have unrestricted FaceTime/phone contact with Children, ordered I.F. continue in therapy with Dr. Cash, and ordered that Father's Soberlink was no longer mandatory, but "shall be installed at [the] discretion of the parties." *Id.*

On November 18, 2022, the parties entered into an "Agreed Custody Order" that gave the parties shared legal custody of Children and granted Mother primary physical custody of Children, with Father having supervised visits for three hours every Sunday and unfettered FaceTime and phone calls with Children. *See* Agreed Custody Order, 11/18/22, at 1-2 (unpaginated). The order also mandated that Father participate in Alcoholics Anonymous, attend alcohol counseling, and submit remote breath samples (via Soberlink) three times per day, seven days per week. *Id.* at 2 (unpaginated).

On February 7, 2023, Father filed an emergency petition for custody claiming that four days earlier he received notification from Delaware County Children and Youth Services (CYS) that Mother was the subject of child abuse allegations with regard to Children, that the allegations are currently being investigated by law enforcement, that a forensic interview of Children is being scheduled, that Children have been residing with paternal grandparents pursuant to a family safety plan, and that Father "wishes to reunite with [C]hildren as the primary physical custodian [as he only has supervised custody every Sunday currently.]" *See* Emergency Petition for Custody, 2/7/23, at 2 (unpaginated).

On March 16, 2023, the court granted Father's request for a temporary Protection from Abuse (PFA) order against Mother with regard to I.F. **See** N.T. Temporary PFA Hearing, 3/16/23, at 9. However, the court clarified that paternal grandparents would continue to exercise temporary, physical custody of Children. **Id.** at 10. Following a hearing held on April 21, 2023, the court denied the request for a final PFA order, concluding that Father's allegations were unfounded and reinstated the parties' November 2022 custody order. **See** N.T. Final PFA Hearing, 4/21/23, at 40. In response to a contempt petition filed by Father and Mother's answer and counterclaim to Father's contempt petition, on May 10, 2023, the parties entered into a "temporary agreed order" granting Mother sole legal custody of Children and prohibiting Father from "unfettered and unrestricted" telephone calls with Children.[8]

The court held five days of custody hearings in May and August 2023 and October 2024.[9] Following the parties' post-submission filings, the court

---

[8] At the time the court entered the final custody order, it noted that Mother "is currently facing criminal assault charges in relation to [] T[.]F[.]," and that the CYS abuse allegation had been "indicated." Final Custody Order, 12/11/24, at 35, 38. However, the court found, in an unrelated PFA petition brought by Father, that Mother's alleged behavior toward T.F. (who has special needs) was done without malice and produced no injury. **See id.** at 36.

[9] On October 15, 2024, the court ordered that Children temporarily reside with paternal grandparents and gave maternal grandmother temporary partial physical custody on alternating weekends. The order also granted Mother temporary physical custody, supervised custody during the school year on Mondays and Wednesdays as well as every Saturday afternoon and gave Father the right to three 10-minute phone calls/FaceTimes per week with each child. **See** Temporary Custody Order, 10/15/24, at 1-7.

entered a 54-page final custody order, which included findings of fact and conclusions of law, granting Mother and Father shared legal custody of I.F. and A.F., shared physical custody of A.R., and awarding Father primary physical custody of I.F. *See* Final Custody Order, 12/11/24, at 1-2, 18, 21. The court's order also mandates, among other things, that Father undergo a substance use and mental health evaluation and enroll in anger management class and that Mother schedule hair follicle testing and a substance use evaluation[10] and enroll in family counseling with I.F. *Id.* at 7-9.

On December 23, 2024, Mother filed a motion for reconsideration of the final custody order which the court denied on January 10, 2025. Mother filed a timely notice of appeal and Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. Mother raises the following issues for our consideration:

(1)  Whether the trial court erred as a matter of law and/or abused its discretion by granting Father primary physical custody of I[.]F[.] and granting the parties shared physical custody of A[.]F[.] based upon its analysis of and findings related to the sixteen (16) custody factors set forth in 23 Pa.C.S.A. § 5328(a), as the trial court's findings are unsupported by the record. In particular:

(a)  Whether the trial court erred as a matter of law and/or abused its discretion in its analysis of 23 Pa.C.S.A. [§] 5328(a)(1) by finding that this factor favors neither parent because: it disregards Father's serious mental health issues (including suicide attempts and threats),

---

[10] Father averred that Mother has abused Adderall. Although the court states that it found no supporting evidence of this claim, it, nonetheless, ordered she schedule a hair follicle test and undergo a substance abuse evaluation. *Id.* at 52.

Father's alcoholism and alienation of [] Children; it is inconsistent with the trial court's past findings that Father posed such a danger to [] Children [] that his custodial time was suspended[;] and the trial court's own letter o[f] October 8, 2024 [] inappropriately weighed unproven allegations made against Mother by T[.]F[.]; and failed to address the emotional and psychological safety of [] Children[;]

(b) Whether the trial court erred as a matter of law and/or abused its discretion in its analysis of 23 Pa.C.S.A. [§§] 5328(a)(2), (2.1)[,] and (2.2) and its finding that these factors favored Father because: it disregards Father's threats of violence to Mother (including those in front of [] Children); it disregards the trial court's own findings that Mother had not abused [] Children; and it disregards Father's emotional, verbal, psychological[,] and litigation abuse[;]

(c) Whether the trial court erred as a matter of law and/or abused its discretion in its analysis of 23 Pa.C.S.A. [§] 5328(a)(2.3) and its finding that this factor favored neither party because it disregards evidence that Father has denied Mother of custodial time in violation of court orders and has significantly alienated [] Children (I[.]F[.] especially) from Mother[;]

(d) Whether the trial court erred as a matter of law and/or abused its discretion in its analysis of 23 Pa.C.S.A. [§] 5328(a)(6) and its finding that this factor favored Father since there is no evidence of record that T[.]F[.] resides with Father, nor that living with T[.]F[.], an incredibly troubled child, would be in the Children's best interests, and the court's [o]rder separates the Children by issuing different custody schedules for them[;]

(e) Whether the trial court erred as a matter of law and/or abused its discretion in its analysis of 23 Pa.C.S.A. [§] 5328(a)(7) and its finding that this factor favored Father with regard to I[.][F.] because: it disregards the trial court's finding that the child's testimony was coached/that Father manipulated [I.F.]; it is inconsistent with the trial court's determination that IF's preference was not well-reasoned; there was no

- 10 -

evidence of record to support a finding that I[.]F[.] would suffer emotional harm if she spent custodial time with Mother, especially in light of the fact that she had been solely living with Mother for the two years preceding the entry of the [o]rder, with the exception of a four-month period when she was temporarily under the care of the paternal grandparents, and was still frequently seeing and speaking to Mother without issue[;]

(f)     Whether the trial court erred as a matter of law and/or abused its discretion in its analysis of 23 Pa.C.S.A. [§] 5328(a)(8) and its finding that this factor favored Mother "only slightly" because it disregards the voluminous evidence of record, as well as the trial court's own findings, that Father alienated [] Children against Mother, i.e. turned [] Children against Mother[;]

(g)     Whether the trial court erred as a matter of law and/or abused its discretion in its analysis of 23 Pa.C.S.A. [§] 5328(a)(13) and its finding that this factor favored neither party because it disregards Father's anger, Father's hostile and abusive communications to Mother, Father's unreasonable ability to communicate/refusal to communicate with Mother, as well as Dr. [Stanley] Clawar's conclusions[;]

(h)     Whether the trial court erred as a matter of law and/or abused its discretion in its analysis of 23 Pa.C.S.A. [§] 5328(a)(14) and its finding that this factor favored Mother "only slightly" because it disregards and downplays Father's substantial history of alcohol abuse, refusal to get treatment for this alcohol abuse (in violation of court orders), Father's repeated violations of alcohol related provisions in court orders, missed and failed Soberlink tests, tampering with the Soberlink device, his denial that he has a problem, and zero evidence that he had changed, accepts responsibility for his actions, or has been sober for any period of time in the last two years. The trial court acknowledges this concern by actually ordering Father to undergo another substance use evaluation in the [o]rder under appeal, yet grants Father unsupervised custody before the evaluation is even complete[d;]

- 11 -

(i) Whether the trial court erred as a matter of law and/or abused its discretion in its analysis of 23 Pa.C.S.A. [§] 5328(a)(15) and its finding that this factor favored Mother "only slightly" because it disregards and downplays Father's serious mental health conditions, prior hospitalizations for these conditions, Father's suicide attempts and threats, Father's self-harm in front of T[.]F[.,] Father's severe impulse control and anger issues, and Father's refusal to attend anger management and therapy despite [c]ourt [o]rders requiring him to do so. The trial court repeatedly referenced these concerns at numerous court listings during the pendency of this trial and even acknowledges this concern by ordering Father to undergo another mental health evaluation and attend an anger management class in the [o]rder under appeal, yet grants Father unsupervised custody before the evaluation and class is even complete. Father presented no evidence that he sought mental health treatment or that his mental health had improved from his prior suicide and self-harm attempts, including those in front of one of the Children during the pendency of this action[; and]

(j) Whether the trial court erred as a matter of law and/or abused its discretion in its analysis of 23 Pa.C.S.A. [§] 5328(a)(16) and its finding that this factor favored Mother "only slightly" because the trial court places "significant weight" on Dr. Clawar's findings, yet makes a determination (unsupported by the record) that Mother has intentionally engaged in alienation and then disregards Dr. Clawar's recommendations that would support working towards shared physical custody that would be in [] Children's best interest.

(2) Whether the trial court erred as a matter of law and/or abused its discretion by failing to give substantial weighted consideration to the factors [that affect the safety of the Children] contained in 23 Pa.C.S.A. [§§] 5328(a)(1), (2), (2.1), (2.2), (8), (14)[,] and (15)[?]

(3) Whether the trial court erred as a matter of law and/or abused its discretion by granting Father primary physical custody of I[.][F.] when Father[,] himself[,] requested that the parties share physical custody of I[.]F[.?]

- 12 -

> (4)     Whether the trial court erred as a matter of law and/or abused its discretion by failing to make a finding based on the record that there was a risk of harm to [] Children while in Father's care and making appropriate safety conditions, restrictions or safeguards necessary to protect the Children, including supervised custody, pursuant to 23 Pa.C.S.A. [§] 5323(e)[?]
>
> (5)     Whether the trial court erred as a matter of law and/or abused its discretion by failing to award Mother sole legal custody of [] Children by disregarding the high conflict nature of this matter due to Father's conduct and behavior, Father's anger and hostility toward Mother, Father's inability and/or unwillingness to communicate with Mother, Father's angry and abusive communications with Mother and Father's unilateral termination of IF's therapist in violation of court orders[?]

Appellant's Brief, at 4-11.

"The scope of review of an appellate court reviewing a child custody order is of the broadest type; the appellate court is not bound by the deductions or inferences made by the trial court from its findings of fact, nor must the reviewing court accept a finding that has no competent evidence to support it[.]" **Kaneski v. Kaneski**, 604 A.2d 1075, 1077 (Pa. Super. 1992) (citation omitted). "However, this broad scope of review does not vest in the reviewing court the duty or the privilege of making its own independent determination[.]" **Id.** Thus, an appellate court is empowered to determine whether the trial court's incontrovertible factual findings support its factual conclusions, but it may not interfere with those conclusions unless they are unreasonable in view of the trial court's factual findings; and thus, represent a gross abuse of discretion. **Id.**

As the trial court acknowledges in its Rule 1925(a) opinion:

Mother [] is essentially asking this Honorable Court to re-find facts, re-weigh evidence, and/or reassess credibility to conform to her view of the evidence. [Here, t]he [t]rial [c]ourt took into careful consideration all of the evidence presented by both Mother and Father, assessed the credibility and sufficiency of the witnesses and evidence, made independent factual determinations, and determined the weight that should be afforded the evidence pursuant to the custody factors set forth in 23 Pa.C.S.A. § 5328, including all of the abuse (Kayden's Law)[11] factors. . . . The [t]rial [c]ourt's evidentiary findings resulted in the conclusion that it is in the best interests of the [C]hildren for the parties to have joint legal custody of both children, for Father to have primary physical custody of I.F.[,] for the parties to have shared physical custody of A.F., [and] for the parties to submit to evaluations and for Mother and I.F. to attend counseling. Mother offers no valid reason . . . to disrupt this [c]ourt's credibility determinations in favor of her and against Father, and all of the conclusions and findings of this [c]ourt are well within the bounds of discretion under Pennsylvania [l]aw.

Trial Court Opinion, 2/7/25, at 3.

We agree with the trial court that Mother is essentially asking this Court to re-weigh its credibility determinations as well as reassess the evidence as it relates to Father. *See* Appellant's Brief, at 4-11. Here, the trial court not only addressed each of the subsection 5328(a) factors, but employed a thoughtful and methodical balancing analysis to come to its legal conclusions. N.T Custody Trial, 10/22/24, at 23 (court clarifying to parties evidence it will

_____

[11] Kayden's Law refers to a Pennsylvania Senate Bill that amended section 5328(a) by introducing new language into subsection 5328(a)(8), concerning "the attempts of a party to turn the child against the other party, except in cases of abuse where reasonable safely measures are necessary to protect the health and safety of the child from harm." 23 Pa.C.S.A. § 5328(a)(8). The new language provides that one party's "reasonable concerns for the safety of the child and the party's reasonable efforts to protect the child shall not be considered attempts to turn the child against the other party." *Id.*

use to make final custody decision "needs to be made under the factors"). As the court noted, it relied heavily on Dr. Clawar's[12] conclusion "that a shared physical custody arrangement would be beneficial to [C]hildren in that it would cause them to become appropriately emotionally balanced and receive parental input from both parents." Final Custody Order, 12/11/24, at 53-54.

Concomitantly, the court recognized that such a custody arrangement could have a negative impact on Children due to a greater potential of parental conflict with increased interaction between these feuding parties. *Id.* at 54; *see also id.* at 36 (recognizing "[b]oth parents are "extremely stubborn and vindictive towards each other"); *id.* at 39 (court stating both Mother and Father "believe that the other parent is a high level and verifiable threat" to Children and "the levels of vindictiveness and manipulation on the part of both parties has made it highly improbable that either can modify their views on contact without sincere participation in therapy"); *id.* at 50 (court stating parents "overwhelming[ly] lack credibility" and notes their "inability to admit their intentions behind their actions"); *id.* at 2 (court requiring parties "**strictly**" adhere to co-parenting and communication provisions of custody order). However, despite the possibility of problems with the custody arrangement, the court was adamant that "this is the **only** solution that is in the best interests of the [C]hildren." *Id.* at 54 (emphasis in original). *See*

_____

[12] Doctor Clawar is an expert in parental alienation. He was appointed by the court to conduct a parental alienation evaluation of Mother and Father and alienation reports based on the evaluations. He also testified on the first day of the custody trial.

*also id.* at 42 (court noting "it is necessary for this [c]ourt to enter terms that severely limit[] each parent's interaction and influence over the daily households of the other, specifically as it relates to their execution of their parental duties"); *id.* at 46 (court stating "neither parent is more likely to, not only understand, but to actually execute stability for [C]hildren without this [c]ourt entering rigid custodial terms intended to account for as many contingencies as possible").

The majority of Mother's issues are rooted in the claim that Father poses a safety risk to Children due to his alcohol and mental health issues. In particular, Mother asserts that:

> Father has failed to take accountability and complete treatment to address his serious alcohol abuse[,] Father's psychological issues includ[e] self-harm and suicide attempts[,] Father [has] coached [C]hildren on what to say in court, including [making] false allegations of abuse against Mother[,] Father [has] alienated [C]hildren from Mother[,] Father[] lack[s] impulse control[,] Father [has] unbridled anger toward Mother[,] and Father [has] made] statements to [C]hildren that Mother is not their mother.

Appellant's Brief, at 20. *See also id.* at 23 (Mother claiming trial court abused its discretion by "capriciously disregard[ing] substantial, important evidence that affects the safety of [C]hildren").

Instantly, the court carefully crafted provisions in its custody order to address Father's alcohol and mental health issues, ordering that Father follow any treatment recommended by a specialist, "including[,] but not limited to[,] recommendations for [an] Intensive Outpatient Program, prescription medication, and/or Alcoholics Anonymous." Final Custody Order, 12/11/24,

at 7. The court also ordered Father enroll in and successfully complete a county anger management class within one year of the date of the final custody order. *Id.* at 7-8. Notably, the court stated that should Father fail to adhere to these provisions, it may result in modification or possible "cessation" of his custodial rights. *See id.* at 10, 52-53. *See also id.* at 35 (court noting "Father's history of alcohol use has contributed to his overall erratic behavior[,] and he has failed to comply with multiple [c]ourt orders to address same"); *id.* at 52 (Father has a history of multiple suicide threats and attempts, has been 302'd and voluntarily hospitalized as the result of a violent physical outburst in which he injured himself in the presence of [T.][F.]"), *but see id.* at 35 ("Father's alcohol issues present a low safety risk to [C]hildren and must be adequately addressed through professional intervention, which is ordered herein"); *id.* at 38 (court stating that there has been no evidence that, despite Father's alcohol issues, he has ever physically harmed Children, directly placed them in danger while under the influence, has ever threatened Children, or engaged in physical discipline).

Here, the trial court presided over not only five days of custody hearings, but ruled on countless petitions and emergency motions, often requiring additional hearings. *See* N.T. Custody Hearing, 10/22/24, at 23 (trial judge stating "I'm going to examine all evidence that is contained in the record of this matter [which] includes . . . testimony and documents or any other sort of hard evidence that has been moved and made a part of the record"). The frequency with which the court interacted with the parties is reflected in the

multiple temporary custody orders issued throughout the life of this case. As a result, the trial court was extremely familiar with the parties, Children, and the witnesses and experts who offered testimony to aid in determining the custodial arrangement that would be in Children's best interests. To that end, the court stated that, "in spite of this sad state of affairs, [C]hildren need both parents and there is a glimmer of hope that an extremely strict custody schedule, combined with intensive professional therapeutic care, can rescue these children from the debacle that their parents have created." *Id.* at 51. Admittedly, no custody order would have completely satisfied both Mother and Father. However, after reviewing the extensive record in the case, we find that the court's decision is supported by competent evidence and rely upon the trial court's 54-page custody order to affirm. We instruct the parties to attach a copy of that order in the event of further proceedings in the matter.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 7/15/2025